# SUPREME COURT

OF THE

# STATE OF MISSOURI,

AT THE

· OCTOBER TERM, 1892.

---

## LYNCH v. THE ST. JOSEPH & IOWA RAILROAD COMPANY, *Appellant.*

---

Division Two, October 17, 1892.

---

1. **Pleading**: PETITION. A petition may be inartificially drawn and still state a cause of action.

2. ———: ———. Objection to a petition, which states a cause of action but imperfectly, can be made only by demurrer or by motion to make the pleading more definite.

3. **Railroad**: RIGHT OF WAY: TRESPASSER. Where the track and right of way of a railroad in a city are habitually used by the public for a way to the city streets, and there are gates in the railroad fence to enable pedestrians to go upon the right of way and track, one walking on such track on his way to a street is not a trespasser.

4. ———: ———: ———: HARMLESS ERROR. The fact that the court treated the deceased, in an action for his death, by reason of defendant's negligence, as a trespasser on the company's track, being error in defendant's favor, affords no ground for a reversal of the judgment.

5. ———: ———: NEGLIGENCE: INSTRUCTIONS. In an action against a railroad for causing the death of such person walking on its track, it is proper to instruct the jury to the effect that they may find for plain-

(601)

tiff not only if the defendant's servants saw the deceased in time to avoid the injury by the exercise of ordinary care, but also if they, by the exercise of ordinary care, might have seen him in time to have avoided the injury, and failed to exercise such care. (*Guenther v. Railroad*, 108 Mo. 18, *followed.*)

*Appeal from Buchanan Circuit Court.*—HON. O. M. SPENCER, Judge.

AFFIRMED.

*Brown & Craig* for appellant.

(1)    The petition does not plead that the accident resulted from a violation of the city ordinance; hence, it was error for the court to instruct on such ordinance. (2) So it was error to so instruct under the evidence in the case. Bishop on Non-Contract Law, sec. 436; Whitaker's Smith on Negligence, p. 1; Cooley on Torts, p. 630; *Brown v. Railroad*, 49 Mich. 153. (3) The unreasonable doctrine has never been held by this court; in fact it has been uniformly held that the only duty which a railroad company owes to the trespasser on its track is not to injure him if it can be avoided after he is discovered to be in danger. *Yarnall v. Railroad*, 75 Mo. 575; *Williams v. Railroad*, 96 Mo. 275; *Zimmerman v. Railroad*, 71 Mo. 477; *Shaw v. Railroad*, 104 Mo. 648; *Barker v. Railroad*, 98 Mo. 50. The same doctrine is generally held by the courts of last resort of other states. *Toomey v. Railroad*, 24 Pac. Rep. (Cal.) 1074; *Railroad v. Black*, 89 Ala. 313; *Railroad v. Denson*, 83 Ga. 266.

*D. D. Burnes* and *J. W. Boyd* for respondent.

(1)    Under the circumstances in this case it was the appellant's duty to exercise care and caution—to keep a look-out—in running its train at said place in

said city, to avoid injuring pedestrians who might be on its track; and, it was also its duty to comply with the municipal regulations imposed upon it by the ordinance of the city. *Bowman v. Railroad*, 85 Mo. 533; *Karle v. Railroad*, 55 Mo. 476; *Kelley v. Railroad*, 75 Mo. 138; *Fisher v. Galladay*, 38 Mo. App. 531; *Kelley v. Railroad*, 95 Mo. 279; *Burgman v. Railroad*, 88 Mo. 678; *Donohue v. Railroad*, 91 Mo. 357; *Petty v.* *Railroad*, 88 Mo. 306. (2) The following proposition is universally regarded as the law: "Notwithstanding a party may be guilty of negligence in going onto a railroad track without looking or listening for a train, when he could have seen or heard it if he had looked or listened, still the company will be liable for his death if it could have avoided the accident by having observed the provisions of an ordinance regulating the rate of speed or requiring bell to be rung." *Bergman v. Railroad*, 88 Mo. 673; *Kelley v. Railroad*, 75 Mo. 139; *Wernse v. Railroad*, 81 Mo. 368; *Scoville v. Railroad*, 81 Mo. 434; *Welsh v. Railroad*, 81 Mo. 466; *Kelly v. Railroad*, 95 Mo. 279; *Guenther v. Railroad*, 95 Mo. 286; *Dunkman v. Railroad*, 95 Mo. 932; *Hooker v. Railroad*, 76 Wis. 54. (3) The ordinance applies with full force to this case. *Merz v. Railroad*, 88 Mo. 672. (4) Deceased was a licensee on the track. *Lemay v. Railroad*, 105 Mo. 361; *Guenther v. Railroad*, 95 Mo. 287; 76 Wis. 54.

THOMAS, J.—Plaintiff recovered judgment in the circuit court of Buchanan county in February, 1889, for $5,000 for killing her husband, and the defendant appeals.

I. The first point urged by defendant for reversal of the judgment is that the plaintiff's petition fails to state facts sufficient to constitute a cause of action. No objection to the petition was made in the court

below prior to the verdict, except to the introduction of any evidence because the petition wholly failed to state a cause of action. The petition alleges that at the time of her husband's death, which occurred inside the limits of the city of St. Joseph, the ordinances of that city prohibited the running of a locomotive, engine, passenger car or freight car "upon or along any railroad track within said city at a greater speed than the rate of five miles per hour," and required that the bell of each locomotive or engine should be rung continually while running within said city; that her husband went upon defendant's track in said city at a point where it was used, and where defendant had permitted it to be used for public travel; that while he was so on said track defendant negligently ran its engine and train of cars onto and over him, thereby killing him; that, at the time of running over him, the train of cars was propelled within said city "at a greater speed than at the rate of five miles per hour;" that neither the bell nor whistle of the engine was rung or sounded as the train approached him, and that "by reason of the facts aforesaid she is and was damaged to the extent of $5,000."

The specific objection now made to this petition is that it fails to state "that the accident resulted from a violation of the city ordinance. Although the ordinance, the speed of the train and failure to ring the bell are set out with particularity, no attempt is made to connect those matters with the striking of plaintiff's husband." This point would probably have been well taken if it had been raised by demurrer, but we do not think it good on objection to the introduction of any evidence. Though inartificially drawn, the petition does not wholly fail to state a cause of action. An objection to a petition which states a cause of action

imperfectly can be made only by demurrer or motion to make more definite and specific. *McDermott v. Claas*, 104 Mo. 14.

But the petition does state one ground of relief clearly and specifically, and that is that defendant negligently ran its train of cars over plaintiff's husband and thereby killed him, and the right of plaintiff to recover on the ground of defendant's failure to comply with the city ordinances could have been contested only during the subsequent progress of the trial, and the objection that plaintiff did not count on such failure nowhere appears in this record. But we think, taking the petition as a whole, it does count on the failure of defendant to comply with the ordinances though the averments in that particular are not as direct, concise and clear as they should have been, but they are not so defective in substance as would justify the court in holding the petition bad after verdict.

II.   The next contention arises upon the instructions and the evidence.

The defendant's railroad was constructed and opened for business about the thirteenth day of October, 1887—the October next preceding the accident upon which this suit is founded. It entered the southern limits of the city of St. Joseph at a point near the corner of Eleventh and Atchison streets, running in a northwesterly direction, and, with a curvature to the right or to the north, through a tract of land called the Noble tract, which had never been laid off into streets, alleys and town lots, but was used for meadow, pasturage and various farming, gardening purposes, for a distance of about one-third of a mile, and thence past a tier of town lots to an intersection with Hickory street, making in all a distance of about one-half mile without having crossed any street, and thence about a mile north to the Union depot. Through all this dis-

tance it runs side by side with the Hannibal & St. Joseph and the St. Joseph, St. Louis & Santa Fe railroads, and the right of way of the three roads is fenced, and there is no crossing of the tracks of any of them between said Eleventh and Hickory streets. Defendant's railroad is on the north side, the Hannibal in the middle and the Santa Fe on the south, with a distance of from forty to fifty feet between them. The two last-named railroads had been constructed many years.

Prior to the construction of defendant's track the Hannibal Company had a fence on the north line of its right of way, and inside this fence there was a path that was used by footmen and sometimes by wagons. There were four gates some distance apart through the fence, three of them being opposite respectively three tenement houses on the Noble tract, in one of which, situated about three hundred feet from the track, plaintiff's husband resided with his family. Defendant's track in front of these houses, and at the point where Mr. Lynch was killed, was placed on an embankment about four feet high, which was constructed against the fence, by which the foot of the embankment was supported. The fence extended about a foot above the top of the embankment. The gates described still remained in the fence, and there was still a sort of foot path remaining between the defendant's track and that of the Hannibal Company.

The evidence shows that people were accustomed daily to enter the right of way of these three companies through the Noble tract, and to walk along the railroad tracks both ways to the streets that intersect them. The evidence shows further that plaintiff's husband about nine o'clock in the morning of the sixth day of January, 1888, went on defendant's track at a point opposite his house, turned north, and, after he had walked about

three hundred and thirty-five feet, the defendant's passenger train running on its regular time, at a speed of about eighteen miles an hour, struck and killed him. There was a slight down grade at this point, the morning was a gloomy one, and it was sleeting and raining or sleeting and snowing. The evidence tended also to show that the deceased could have been seen for a distance of fifteen hundred feet from the direction in which the train approached him.

The evidence on the part of defendant tended to show that the train was running from six to ten miles per hour.

Upon these facts the court instructed the jury "that if they find from the evidence that the plaintiff, on the sixth day of January, 1888, was the wife of one Charles Lynch, that said Charles Lynch on said sixth day of January, 1888, was walking along the railroad track of defendant in the city of St. Joseph, between the point where said track is crossed by Eleventh street and Hickory street in said city of St. Joseph, and that while the said Charles Lynch was walking along said track the said defendant negligently ran and operated its engine and train of cars between the points aforesaid over its said railroad track at a greater speed than five miles per hour, and without ringing the bell on its said engine continually while running within said city as aforesaid, then the jury will find for the plaintiff if they further find that on account of said negligence said defendant then and there ran its cars and engines onto and over said Lynch, then and there inflicting upon him certain mortal wounds and bruises, which then and there resulted in his death; provided the jury further find from the evidence that the agents and servants of the defendant, in charge of said train, either saw said Charles Lynch upon said railroad track, or might have seen him by the exercise of ordinary

care on their part, in time, by the exercise of ordinary care, to have prevented the injury, and that said agents and servants after that negligently failed to exercise ordinary care in running and operating said train, and that such failure to so exercise ordinary care as last aforesaid caused the injury which resulted in the death of said Charles Lynch. Lynch, the deceased, was at the time he received the injury which resulted in his death, unlawfully upon the track of defendant, and the defendant is not liable in this action, unless, at the time of the injury, the servants of defendant, in charge of defendant's locomotive and train saw, or could by the exercise of ordinary care have seen, deceased, and thereafter, by the exercise of ordinary care, have prevented the injury.''

The defendant urges two specific objections to these instructions: *First*, that the court having assumed that Lynch was a trespasser erred in submitting to the jury defendant's failure to comply with the city ordinances as a ground of recovery, and, *second*, Lynch being a trespasser the court erred in authorizing the jury to find for plaintiff if defendant's servants in charge of the train, by the exercise of ordinary care, might have seen him in time to have avoided killing him. It is difficult to determine accurately what the court intended by that part of the instructions which refers to defendant's failure to comply with the city ordinances, because the jury was explicity told that in order to find for plaintiff they must find from the evidence that defendant's servants either saw, or by the exercise of ordinary care might have seen, Lynch in time to have prevented the injury, which would have justified a verdict for plaintiff without regard to the requirements of the city ordinances; but we may infer from some of the rulings of the court during the trial, taken in connection with the instructions, the court

intended to give the jury to understand that they had a right to take into consideration defendant's duty under the city ordinances in the management of its trains, in determining whether defendant's servants could by the exercise of ordinary care have stopped the train in time to have avoided the injury. The court, over defendant's objections, admitted evidence showing how soon a train of cars could be stopped if running at a rate of speed not greater than five miles per hour, and we must assume in the disposition of this question that the jury was influenced by the fact that a train can be more readily managed and stopped when running at the rate of five miles per hour than when running eighteen or twenty miles per hour.

The question then is was plaintiff's husband, at the time he was struck and killed, entitled to the protection intended to be afforded citizens by the said ordinances? Defendant insists he was not because he was a trespasser in fact, and because the court told the jury he was a trespasser. We are not called upon at this time to decide whether a trespasser can take advantage of a failure of a railroad company to comply with city ordinances of the character of those read in evidence in this case, for all the evidence as set out in defendant's statement shows that the railroad right of way and tracks at the point of the accident were habitually used by the public for a way to the streets of the city, there being four gates in the fence to enable pedestrians to get upon the right of way and tracks. Therefore, so far as the *locus in quo*, as to pedestrians, is concerned, it is the same as if it had not been fenced at all. "When a railroad company lays down its tracks in a populous city, not within any inclosure, but on ground open to the public, the mere fact that rails are not laid over a public street or highway, but on private property of the company ought not to be

held to relieve it of its obligation to observe all reasonable municipal regulations as to the movement of its trains within the limits of the corporation." *Merz v. Railroad*, 88 Mo. 672; *Bluedorn v. Railroad*, 108 Mo. 439; *Whitson v. City of Franklin*, 34 Ind. 392.

The fact that the court below assumed that deceased was a trespasser cannot be invoked by defendant, for it was error in its favor. As to the second objection to the instruction, that it authorized a verdict for plaintiff, not only if defendant's servants saw the deceased in time to have avoided the injury by the exercise of ordinary care, but also if they by the exercise of ordinary care might have seen him in time to have avoided the injury, and failed to exercise such care, we will simply say that the facts of this case bring it clearly within the purview of the rulings of this court in *Guenther v. Railroad*, 108 Mo. 18, and *Fiedler v. Railroad*, 107 Mo. 645, and cases cited therein.

The judgment will be affirmed. All concur. •