MORRIS FRANKEL, Appellant,   v.   HERBERT   N.
HUDSON.

### Division One, July 14, 1917.

1. **APPEAL: Abandonment: Institution of Second Action.** The institution of a second action based on the same facts, after a demurrer to plaintiff's case had been sustained and he had appealed, did not constitute an abandonment of the appeal.

2. **AUTOMOBILE: Pedestrian: Crossing Street: Highest Degree of Care.** A pedestrian has a right to use a public street, and an automobile, confined to neither track nor rails, is a dangerous agency. By statute drivers of automobiles moving along a public street must use "the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury" to persons in the street; in approaching a pedestrian "who is upon the traveled part of any highway, such motor vehicle shall slow down and give a timely signal;" and in approaching a street car which has been stopped to discharge or take on passengers, the same precautions must be observed.

3. **NEGLIGENCE: Pleading: Humanitarian Doctrine.** An allegation that defendant negligently drove and operated his automobile and thereby struck and injured plaintiff, is a sufficient pleading to let in the humanitarian doctrine.

4. ————: **Case for Jury: Contributory Negligence.** If there is evidence warranting a finding that defendant violated the statute in driving his automobile, the case is one for the jury, and whether defendant was guilty of contributory negligence in becoming excited and attempting to escape is also for the jury to decide.

5. ————: **Contributory: Fright.** Fright at the suddenly discovered approach of an automobile imminently near is something so natural and usual that one driving such a vehicle should anticipate

it and govern himself accordingly, where the circumstances indicate a pedestrian in the street may be taken unawares.

6. ———: ———: ———: **Error in Judgment.** One in peril through the negligence of another is not, as a matter of law, guilty of contributory negligence if, in attempting to escape, he errs in judgment and moves in the wrong direction.

7. ———: ———: **Case for Jury: Demurrer to Evidence.** If the evidence establishes without contradiction that a pedestrian, without looking, stepped off the sidewalk immediately in front of an automobile, moving slowly and carefully and giving warning signals, a demurrer to his case should be sustained. But if there is evidence (1) that he was standing in the street, at a crossing, waiting for a street car, which had stopped, to move out of the way; that defendant, approaching in his automobile, at a rate of five or six miles an hour, saw plaintiff twenty-five or thirty feet away, and gave no signal and did not slow down, but proceeded directly towards plaintiff until he saw a collision with him was imminent, and without checking the speed or giving any signal he proceeded until he struck him; or (2) that, although defendant saw plaintiff in the street twenty-five or thirty feet away, he approached in his automobile within ten feet without warning him or slowing down, and plaintiff attempted to escape and in his excitement went in the same direction the automobile had taken and was struck; (3) or that the defendant saw the pedestrian in a perilous situation in the street in time to have stopped, but did not do so; or (4) that defendant, after turning to one side and after plaintiff attempted to escape, could have stopped his automobile before striking him, but proceeded some eighteen feet from the point where he first turned aside, caught up with the plaintiff and injured him, the case is one for the jury.

8. ———: ———: ———: **Evidence Assumed as True.** In determining whether the case should be submitted to the jury, all evidence and inference unfavorable to the plaintiff must be disregarded, and all evidence and all reasonable inferences favorable to him must be taken into consideration. And this rule is not affected by the fact that the witnesses were all called by plaintiff.

9. **STRIKING OUT PLEADING: Discretion.** The refusal of the trial court to strike out the pleading of a party refusing to testify or give his deposition, is to be interfered with only in a case of a clear abuse of discretion. Appellate courts seldom hold such rulings erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

REVERSED AND REMANDED (*with directions*).

*David Goldsmith* and *Sale & Frey* for appellant. .

(1) The court erred in giving the instruction of non-suit at the close of the plaintiff's case in the nature of a demurrer to the evidence. (a) In passing on a peremptory instruction in the nature of a demurrer to plaintiff's evidence, the court must consider the evidence introduced by plaintiff as true, and make every finding and deduction in his favor which the jury would have been warranted in making. Meenach v. Crawford, 187 S. W. 882; Williams v. Railroad, 257 Mo. 112, 52 L. R. A. (N. S.) 443; Grouch v. Heffner, 183 Mo. App. 372. (b) Pedestrians have a lawful right to use a traveled public highway. The plaintiff was lawfully on the street at the place and at the time when the defendant drove his automobile against and over the plaintiff. Meenach v. Crawford, 187 S. W. 883; Ostermeier v. Implement Co., 255 Mo. 135. (c) When a pedestrian upon a public highway is run over by an automobile there arises a presumption that the driver of the automobile was negligent. Babbitt on Motor Vehicles, sec. 269, p. 284. (d) The driver of an automobile is bound to exercise "the highest degree of care that a very careful person would use under like or similar circumstances, to prevent injury" to persons on or traveling over, upon or across the public streets. Sec. 12, Laws 1911, p. 330. "In approaching or passing a car of the street railway which has been stopped to allow passengers to alight or to embark, the operator of every motor vehicle shall slow down, and if it be necessary for the safety of the public, he shall bring said vehicle to a full stop." Sec. 8, Laws 1911, p. 327. (e) Automobiles are highly dangerous agencies. They do not travel upon any fixed tracks, but appear on all parts of the streets. They are of great weight and run rapidly, and one can never tell what course they will take on the appearance of a threatened collision. Meenach v. Crawford, 187 S. W. 883; Ex parte Kneedler, 243 Mo. 632, 40 L. R. A. (N. S.) 622; Ostermeier v. Implement Co., 255 Mo. 128; Bongner v. Ziegenhein, 165 Mo. App. 328; McFern v. Gardner, 121

271 Mo.—32

Mo. App. 10. (f) In the cause at bar the facts required a finding for the plaintiff by the jury; *a fortiori,* they warranted such a finding. Meenach v. Crawford, 187 S. W. 882; Grouch v. Heffner, 184 Mo. App. 373; Jenkins v. Goodall, 183 Ill. App. 636; Raymond v. Hill, 168 Cal. 473; Navailles v. Deiman, 50 So. 449; Kessler v. Washburn, 157 Ill. App. 537; Ostermeier v. Implement Co., 255 Mo. 128. (2) The court should have sustained plaintiff's motion to strike out defendant's answer when defendant refused to appear to give his deposition. The defendant had been personally served with a notice to take depositions, had been duly subpoenaed, and had accepted witness fees. The discretion of the court in this matter was a legal discretion and not an arbitrary one. Larimore v. Bobb, 114 Mo. 446.

*W. Christy Bryan* and *Charles E. Morrow* for respondent.

(1) There was no evidence tending to show that the defendant was guilty of any negligence, and the peremptory instruction to find for the defendant was properly given. Winter v. Van Blarcom, 258 Mo. 418; Parks v. Lindemann, 161 Wis. 101. (2) The plaintiff was standing in a place of safety, and, suddenly, without looking, and without notice to defendant, negligently ran into the automobile which had turned away from him, and thereby caused his own injuries. Winter v. Van Blarcom, 258 Mo. 418; Knapp v. Barrett, 216 N. Y. 226. (3) The court did not err in refusing to strike out defendant's answer. (a) The subpoena served upon the defendant in Chicago was issued by a notary public without authority, nor did it properly designate the court in which the cause was pending. No *dedimus* to take depositions had been issued at that time by the court in which the cause was pending in Missouri, as required by both the Illinois and Missouri statutes. R. S. 1909, secs. 6385, 6389; R. S. 1909, Illinois, sec. 36, p. 1123; In re Nitsche, 14 Mo. App. 213. (b) Even when the *dedimus* was issued subsequent to the issuance and service of the subpoena, it did

not contain the name of witnesses, as required by the Illinois statutes. R. S. Ill. (1909), sec. 36, p. 1123; McLean v. Thorp, 4 Mo. 159. (c) The alleged subpoena attempted to be served, therefore, had no vitality and could not be vitalized by the subsequent issuance of the *dedimus*. In re Nitsche, 14 Mo. App. 213.

BLAIR, J.—Appellant brought this action for damages for injuries received when he was struck by respondent's automobile. This appeal followed an order overruling a motion to set aside an involuntary nonsuit.

Since his appeal in this case, appellant began a second action against respondent, in which the petition counted on the same facts. Respondent has filed a motion to dismiss the appeal on the ground that the institution of the second action is an abandonment of the appeal in this.

After the petition in this case was filed, appellant gave notice to take depositions in Chicago, and subpoenaed respondent to give his deposition in that city. Respondent did not appear, and appellant subsequently moved to strike out his answer. This motion was overruled, and this ruling is assigned for error.

Before the trial appellant caused to be issued a *subpoena duces tecum* commanding one Owen Jackson to produce at the trial a writing signed by respondent and alleged to contain material admissions. Jackson made return to this subpoena that he was an attorney at law and was counsel of record for respondent in this case and that all communications by respondent to him were privileged; that he did not have, at the time the subpoena was served on him nor thereafter, any writing or statement or copy thereof such as was described in the subpoena. The court took up the matter, recalled the subpoena and set aside the order for its issuance. This is assigned for error.

After the evidence was in and respondent's demurrer thereto had been tendered and respondent had announced he would stand on his demurrer counsel asked that appellant be recalled, a dispute having arisen as to

his testimony. This was refused, and the refusal is assigned for error.

The evidence concerning the manner of appellant's injury is set out in the opinion.

I.   Respondent contends the filing of the second action constituted an abandonment of the appeal and that, despite the fact no service was had in such second action and it was dismissed for want of prosecution long prior to the docketing and submission of this cause, this appeal must be dismissed. Cases are cited. In Dannan v. Coleman, 8 Mo. App. 594, 595 (Memo.), it is held that a defendant who takes leave to plead after his demurrer is overruled is presumed to abandon his demurrer and cannot stand on it after an interlocutory judgment against him for failure to plead. In Gilstrap v. Felts, 50 Mo. l. c. 431, appellant had, after judgment arrested and new trial granted, participated in the new trial. It was held he could not complain of error in granting the new trial. In Burke v. Cunningham, 42 Neb. 645, an appeal was first taken and a writ of error subsequently sued out. This last was held as an abandonment of the appeal under the law of that State. These decisions do not decide the question before us. From the statute (Secs. 1800 and 1804, R. S. 1909) it appears the pendency of this action might have been tendered as ground of abatement of the second action. The institution of the second action no more constituted an abandonment of this appeal than it, *ipso facto,* would have constituted an abandonment of this action had this been pending in the circuit court when the second action was begun.

*Abandonment of Action.*

II.   The question whether the evidence introduced entitled appellant to have his case submitted to the jury, necessitates an examination of the testimony.

Appellant testified that about 9:30 a. m., June 5, 1912, he and one Jordan were on their way to Seventh and Morgan streets and had reached the southwest cor-

ner of Seventh and Locust; that an east-bound street car had stopped there, and that he and Jordan wait-

<span style="float:left">Case for Jury.</span> ed on the sidewalk until the bell for the car to proceed sounded; that he and Jordan then stepped into the street and took four or five steps north into Locust Street, when the car struck him, and he remembered nothing more.

Jordan testified that he and appellant reached the curb on the southwest corner of Seventh and Locust and stopped because of the presence of a street car in the street; that there "were lots of people there;" that he and appellant waited until the street car moved on and then took one step into the street and were immediately struck; that before stepping into the street he looked west and did not see the automobile; that when he first saw it it was five or six feet west of appellant; that "it might not have been a second" after they stepped into the street before they were struck; it was a very short time; "we had no more than hit the curb before we met with the accident;" that the right-hand front fender struck appellant; that aside from the street car he saw, before stepping into the street, no moving vehicle in Locust Street west of the point where he and appellant were standing.

Re-cross examination:

"Q. The fact of the matter is that the first time you looked west, after you went to step down on to the street, or after you had stepped down on the street, you saw this automobile some four or five feet west of you —wasn't it right on you, the first time you looked west after you stepped into the street? A. · Yes, sir.

"Q. You saw the automobile some four or five feet away from Frankel (appellant)? A. Yes, sir.

"Q. And then it was almost on you and immediately struck you? A. Yes, sir; that is it exactly."

Recalled, Jordan testified that when he saw the automobile he tried to jerk appellant out of the way; that appellant was paying no attention at all and he (Jordan) was not paying a great deal; that he and appellant would not have been struck if they had stood where they were,

provided the car had come straight; that the car actual-
ly swerved to the north; that he may have jerked Fran-
kel to the north; that he was excited.

James Fitzpatrick testified he was on the northwest
corner of the crossing and saw the occurrence; that ap-
pellant and Jordan were standing *in the street,* talking
earnestly; they were about four feet from the curb; that
he saw the automobile approaching, but fifteen or twen-
ty feet away from them, and called to them, but they
"didn't seem to hear;" that defendant sounded his horn,
but they seemed not to hear it; that as defendant saw
he "was going to run into them he turned the machine
a little north, and the two men had seen the machine at
that time and they ran in the same direction to get out
of the way," and the automobile struck them; that he
was not a good judge of speed, but supposed the auto-
mobile was going five or six miles per hour; that it was
twenty to twenty-five feet from the men when he first
saw it; that the space between the south car-track and
the curb at that point is ten or eleven feet; that he saw
no street car there.

"Q. You say you heard a horn blow? When did
this horn blow? A. Shortly before it hit the man.

"Q. About how far was the machine from the man?
A. Well I guess the distance, when I first had seen the
machine, was about twenty-five or thirty feet away,
something like that.

"Q. Was it the automobile horn that blew? A.
Yes, sir."

He testified that if the men had stood still, where
they were when he first saw the automobile, it would, had
it continued in its course, have passed without striking
them; that the automobile approached to within ten feet
of the men and they ran north in the same direction the
automobile turned and they had gone about eight or ten
feet when it struck them.

There was evidence the automobile could have been
stopped in three and one-half to six feet and that the
rate at which it was traveling, five or six miles an hour,

was a careful rate and one at which the vehicle could be said to be under control.

In determining whether the cause should have been submitted to the jury, all evidence and inferences un-favorable to appellant must be disregarded, and all evidence and all reasonable inferences favorable to him must be taken into consideration. This rule is not affected by the fact that the witnesses were all called by appellant. While he could not impeach one of his own witnesses, he was at liberty to prove the facts to be otherwise than as such witness testified. [Schumacher v. Breweries Co., 247 Mo. l. c. 154, 155, and cases cited.]

It is to be kept in mind that appellant had a right to use the street and that the vehicle which injured him was one which is not confined to a track or rails and one which is recognized as a dangerous agency. By statute (Laws 1911, pp. 326, 327, 330) it is required that drivers of automobiles moving along public streets must use "the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury" to persons in streets; and that in approaching a pedestrian "who is upon the traveled part of any highway, and not upon a sidewalk . . . such motor vehicle shall slow down and give a timely signal;" and in approaching a street car which has been stopped to discharge or take on passengers the same precautions are enjoined. [Meenach v. Crawford, 187 S. W. 879.]

There is evidence appellant was standing in the street, at a crossing, waiting for a street car, which had stopped, to move out of the way; that respondent approaching in his automobile, at the rate of five or six miles per hour, saw appellant twenty-five or thirty feet away; that respondent gave no signal and did not slow down, but proceeded directly toward appellant until he saw a collision with him was imminent; that, without checking his automobile or giving any signal he proceeded until he struck appellant. Another view supported by the evidence is that though he saw appellant twenty-five or thirty feet away, he approached within ten feet of

him without warning him or slowing down, and seeing a collision to be imminent, attempted to turn out into the street; that appellant and his companion attempted to escape and in their excitement went in the same direction the automobile had taken and were struck. Also, the evidence warrants the conclusion that respondent saw appellant in the street in time to have stopped, but did not do so; also that respondent, after turning out, if he did, and after appellant attempted to escape, could then have stopped before striking him, but proceeded into the street some eighteen feet from the point where it is said he first turned out, caught up with appellant and injured him.

(a) The petition charges respondent negligently drove and operated his automobile and thereby struck and injured appellant. Under the rule long settled in this State this allegation is sufficient pleading "to let in the humanitarian doctrine." [Fleming v. Railroad, 263 Mo. l. c. 188, 189; Kellny v. Railroad, 101 Mo. 75; Hilz v. Railroad, 101 Mo. 56; Hanlon v. Railroad, 104 Mo. l. c. 391.] The evidence clearly warranted the submission of the cause on that theory.

(b) Without regard to the humanitarian doctrine, the evidence was for the jury. There was evidence warranting a finding that respondent violated the statute, and whether appellant was guilty of contributory negligence was for the jury to decide. [Meenach v. Crawford, supra; Carradine v. Ford, 187 S. W. l. c. 289, 290; Grouch v. Heffner, 184 Mo. App. l. c. 372, 373, and cases cited.] Even if the jury should find appellant and his companion became excited and, attempting to escape, fled in the wrong direction, it is yet a question of fact whether, in the circumstances, that action was negligent. Fright at the suddenly discovered approach of an automobile imminently near is something so natural, so usual, that one driving a vehicle should anticipate it and govern himself accordingly where the circumstances indicate one in the streets may be taken unawares. [Meenach v. Crawford, supra; Hodges v. Chambers, 171 Mo. App. l. c. 567.] One in peril through the negligence

of another is not, as a matter of law, guilty of contributory negligence if, in attempting to escape, he errs in judgment and moves in the wrong direction. [Heartsell v. Billows, 184 Mo. App. 1. c. 423.]

Respondent cites cases. In Winter v. Van Blarcom, 258 Mo. 1. c. 424, WILLIAMS, C., held that the evidence failed to show any negligence on the part of defendant, and that plaintiff's injury resulted from his suddenly running from a safe place (so far as the automobile was concerned) across the street and in front of a carefully driven automobile, the driver having no opportunity to avoid striking him. In Parkes v. Lindenmann, 161 Wis. 108 et seq., a woman was standing near a street car track awaiting a street car which was approaching and about one-half block away; the driver of an automobile attempted to pass in front of her and between her and the car toward which she was looking; his course was such that the evidence *all* shows she was in no danger had she stood still; the machine would have "cleared her from three to seven feet;" that she ran north and the driver turned south to avoid striking her, and would have done so but she turned back and ran directly in front of the automobile; that the driver tried to stop and again turned north to avoid a collision, but was unable to do so. The fender struck her and the car stopped within two feet. The court recognized the rule that in an emergency the failure to take the best means of escape is not negligence. The court held defendant was not negligent; that the automobile was in plaintiff's line of vision, attempting to pass in front of her and moving so as clearly to avoid striking her and at a careful speed, six miles per hour; that the driver had the right to presume that one waiting for an approaching car did not intend to step forward upon the car track; that the course he took, in the circumstances, "in all probability seemed to be outside of where she [plaintiff] would be likely to be or go" and yet where she would see him; that he could be charged with anticipation of probable results only. It is clear the facts of that case are markedly dif-

ferent from the facts of this, and that the opinion announces no rule in conflict with what has been said.

In Knapp v. Barrett, 216 N. Y. 226, it was held that it is the duty of a pedestrian, in crossing a street, to "use his eyes and thus protect himself from danger." In that case an old man was struck by an express wagon. The trial court instructed that "the law did not require plaintiff to look" but that ordinary care might have required him to look. This was held erroneous. The court said that one who crosses a street without any exercise of the faculty of sight, is negligent as a matter of law, and that, to escape the consequences of such negligence, he must prove the accident would still have happened. The court concedes that no particular manner of looking is required and that the turning of the head is not necessary, as a matter of law, and that a vision of sufficient open space to give a reasonable assurance of safety is enough to take the question to the jury. What was held was that the instruction told the jury, in effect, that plaintiff, though he, without looking at all, "walked blindly in the path of the wagon, they might acquit him of all negligence." That is not this case. Certainly, if the jury find in this case, as some of the evidence tends to prove, that appellant, without looking, stepped off the curb immediately in front of an automobile, moving slowly and carefully and giving warning signals, there can be no verdict against respondent. No statute like ours affected the decision of the New York court, and the evidence in that case is quite unlike the phases of the evidence in this which entitle appellant to a submission of the issues. Other cases are cited, but an examination of them discloses they do not conflict with the views already expressed.

III. Refusal of a trial court to strike out the pleading of a party refusing to testify or give his deposition (R. S. 1909, sec. 6361) is to be interfered with only in a

case of a clear abuse. of discretion.    Appellate courts
seldom hold such rulings erroneous.    In this
case; while the remandment of the cause ren-

**Striking out Pleading.** ders the question of less importance, it may
. nevertheless be said we do not discover such
abuse of discretion as would warrant a holding that the
trial court erred in the matter.

With respect to the ruling on the offer to recall ap-
pellant, that question will hardly arise on another trial.
Neither, in view of the conclusion reached, is it necessary
to discuss the ruling· withdrawing the *subpoena duces
tecum*.

The order overruling the motion to set aside the
nonsuit is reversed and the cause remanded with direc-
tions to sustain that motion and proceed with the cause
in a manner not inconsistent with this opinion.    All con-
cur.