CURTIS WEST, Respondent, v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

Kansas City Court of Appeals, June 13, 1921.

1. **NEGLIGENCE: Street Railroads: Pedestrian in Crossing Street, Held Not Guilty of Contributory Negligence as a Matter of Law.** In an action for personal injuries by pedestrian struck by street car who did not attempt to heedlessly cross street, and when he left the curb, looked and saw the car at least 300 feet away just entering a street intersection, and not knowing that the car was running at a speed in violation of ordinance, and entertained the reasonable belief, that he had time to cross in safety and it was not until he was in the center of track that he realized the car was coming too fast and that he was in danger, it being questionable whether he could have gotten back off the track any quicker than by continuing across, and the fact that when he discovered his peril he became frightened and hesitated before attempting to cross, it is *held*, that under the facts and circumstances plaintiff's contributory negligence did not conclusively appear.

2. ————: **Humanitarian Rule: Pleading: Cause of Action Under Humanitarian Rule Sufficiently Pleaded.** A petition which pleaded that plaintiff was "unconscious of any danger," was tantamount to saying that when plaintiff got into the place of danger he was

oblivious of peril, and hence such allegation, together with other averments containing the elements of the cause of action, was sufficient pleading under humanitarian rule.

3. ———: ———: Evidence: Obliviousness: Evidence Held Sufficient to Submit Case to Jury Under Humanitarian Rule. Where the evidence showed that plaintiff saw the car and knew it was coming, but did not realize it was coming so fast, and he had a right to think it was not coming at such a rate of speed as would enable it to reach him before he got across track, and thereby did not know of his danger until he was in imminent peril, such evidence was sufficient to submit the case to the jury under the humanitarian rule.

4. APPEAL AND ERROR: Instruction: Harmless Error: Contributory Negligence: Instruction Placing Unnecessary Burden Upon Plaintiff Harmless to Defendant. Where the issue of contributory negligence was not pleaded by defendant, it was unnecessary for plaintiff to assume the burden of the issue whether he was guilty of contributory negligence, and the giving of an instruction requested by plaintiff, assuming such burden was harmless to defendant.

5. TRIAL PRACTICE: Verdict: A Verdict Signed by Nine Jurors Which Did Not Recite That the "Undersigned Jurors Find" is Sufficient Under Statute. A verdict returned by jury reading, "We, the jury, find the issues" instead of "We, the undersigned jurors find," which was agreed to by nine and less than twelve jurors, and signed by them, complied with all legal requirements of section 6629, Revised Statutes 1919, as the statute nowhere says that the words "undersigned jurors" shall appear in the verdict.

Appeal from the Circuit Court of Jackson County.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*McCanles, Kennard & Trusty* for respondent.

*E. E. Ball* and *L. T. Dryden* for appellant.

TRIMBLE, P. J.—On the night of January, 30, 1918, plaintiff, in walking east across McGee street, claims to have been struck and injured by a northbound street car. He brought this action for damages and recovered

judgment in the sum of $1000. The defendant has appealed.

A southbound street car stopped at the regular place for letting off and taking on passengers at the intersection of 13th and McGee streets, the front end thereof being about 10 feet north of the north line of 13th street. While it was standing there discharging or taking on passengers, and perhaps doing both, plaintiff, who was on the west side of McGee and about 30 or 40 feet, north of the north or rear end of the standing southbound street car, started east across McGee street to his hotel on the other side. As he stepped off the curb on the west side he looked up and down the street and saw the northbound car south of 13th and in the middle of the block. (According to the evidence this block was 400 feet long.) When plaintiff got in the middle of the first or southbound track and to a point where he could see past the standing car, he looked again and saw the northbound car as it was just entering 13th street, being something less than 160 feet away, but did not know how fast it was going. An ordinance of the city forbade all street cars to cross any street in the city at a greater speed than 12 miles per hour, and knowing this and thinking the street car was obeying the ordinance, plaintiff proceeded in his journey eastward across the northbound track, but when he got thereon he realized the car was coming "very fast" and when he realized this it was about 20 feet away. A policeman of the cycle squad in a Ford police car was coming south on McGee and blew his siren. At the moment plaintiff realized the speed and imminent approach of the street car, he heard the siren of the police car, and becoming confused, hesitated an instant and then endeavored to get off the track on the east side, that is, in the same direction he was going, but he did not quite succeed in doing so. The fender of the car struck against his leg and threw his body against the northeast corner of the car and then it hurled him to the curb about 30 feet away, breaking his wrist.

The evidence in plaintiff's favor is that when he stepped off the west curb and started to go across the street the car was several hundred feet south of him, and he had no idea the car was going as fast as it was until after he was on the track and the car was close upon him. It was up-grade for the car at the place and had the car observed the ordinance and crossed the intersection at no greater speed than 12 miles per hour, plaintiff would have had time to have crossed the street and gotten into his hotel.

The police officer who was driving the Ford automobile was a witness for plaintiff and he says the street car did not slacken speed at the intersection or because of the standing street car, but came on across 13th street at the rate of 25 miles per hour and struck plaintiff. The evidence is that the motorman sounded no warning. There was also evidence that by the use of the emergency brakes the car could have been stopped in 8 or 10 feet and by the use of the air-brakes in 10 or 15 feet.

The motorman, testifying for the defendant, said it was upgrade and the car could not make over 15 miles per hour up that grade; that he saw plaintiff standing on the west side of the street between the curb and the southbound track waiting for the southbound car to pass; that he, the motorman of the northbound car, passed the southbound car, in motion, about 100 feet north of 13th; that plaintiff and two other gentlemen with him started to cross over the southbound track behind the southbound car, but when they were in the middle of the track he rang his bell and two of the men stopped and plaintiff, between the two tracks, hesitated and then made a run across the track and slipped and fell; that his car was about 15 or 20 feet from plaintiff when the latter hesitated; that his car was going about 10 miles per hour and he stopped it with the front door about even with plaintiff; that he did not think his car struck plaintiff, the door of his car was frosted over and he couldn't see the step. He could not say whether he used the sand in order to stop or not.

The petition charged negligence in operating the car at a dangerous and not reasonably safe rate of speed at said public place and past a southbound car stopped on the near side to accommodate passengers; that the operatives of the car were negligent in failing to maintain a reasonable lookout for plaintiff or persons using the street; that they failed to give timely or reasonably sufficient warning of the approach and presence of said car; that they were negligent in not having the car under control.

It was further pleaded that they were negligent in that they operated the car at a greater rate of speed than 12 miles an hour in violation of the city ordinance forbidding the operation of a car across a street at a greater rate of speed than 12 miles per hour.

It was further pleaded that the operatives of the car were negligent: "In that although plaintiff was in peril of being struck by said car, he was unconscious of any danger of being struck by the same until it was so close upon him that he was in helpless peril, all of which defendant's agents in charge of said car knew, or by the exercise of ordinary care might have known, in time to have prevented the accident and injuries herein complained of by the exercise of ordinary care in the use of the appliances at their command, in stopping said car or slackening the speed thereof, or by giving reasonably sufficient warning of the approach of said car, but notwithstanding such facts, defendant and its agents in charge of said car negligently failed to do any of such things."

The answer was a general denial.

While there was no plea of contributory negligence, yet defendant contends that plaintiff's own evidence shows that he was guilty of contributory negligence as a matter of law, and that therefore its *general* demurrer to the evidence should have been sustained.

We are unable to see how we would be justified in so holding. Plaintiff did not attempt to go heedlessly across the street, taking no precaution for his safety.

When he left the curb, he looked and saw the car at least 300 feet south of him and when he got close to the track and where he could see past the standing car he looked again and the car was just then entering the street intersection. Having the speed ordinance in mind and not knowing that the car was violating it, he entertained the reasonable belief that he had time to cross in safety, and proceeded to go across. It was not until he was in the center of the track that he realized that the car was coming very fast, was close upon him, and that he was in danger. With nothing else happening, it would have been a question whether he could have gotten back off the track any quicker than by getting off the way he was going; but at this moment the siren of the police automobile sounded behind him and, though confused and hesitating for a second, he attempted to clear the track and would have succeeded in doing so had he been given an instant more. The plaintiff's contributory negligence does not conclusively appear. [Byerley v. Metropolitan Street Ry. Co., 172 Mo. App. 470, 477-8; Strauchon v. Metropolitan St. Ry., 232 Mo. 587; Heryford v. Spitskaufsy, 200 S. W. 1016.] Nor does the fact that when he discovered his peril he became frightened or confused and hesitated a second and then attempted to get on across. [Frankel v. Hudson, 271 Mo. 495, 504.]

Plaintiff's instruction No. 2 submitted the case on the humanitarian rule. Several objections are raised because of this: First, because it was not sufficiently pleaded; second, because there was no evidence on which to base it; and third, because plaintiff's own conduct was such as to preclude a recovery thereunder. A reference to the portion hereinabove quoted from the petition will disclose that it pleaded he was "unconscious of any danger" and this is tantamount to saying that when he got into the place of danger he was oblivious of peril, hence this and the other elements of a cause of action under the humanitarian rules were pleaded. Nor can we agree with appellant that there is no evidence to support

an instruction on such a rule. Of course he saw the car and knew it was coming, but did not realize it was coming so fast, and he had a right to think it was not coming at such a rate as would enable it to reach him before he got across. In other words he knew of the car but did not know of his *danger* until he was in imminent peril. The motorman admits he saw plaintiff on the west side of the street and up until the latter passed off the track, and according to plaintiff's evidence there was no hesitation or stop in his progress across the street until after he was in the center of the track and in deadly peril. Hence there was nothing in his conduct to lead the motorman to think he was not going to get into danger. In other words, the plaintiff was manifestly going into danger, and it was the motorman's duty to have stopped or slackened speed in order to avoid injuring him, and the evidence is that he could have done so. [Good Roads Co. v. Kansas City Rys. Co., 217 S. W. 858; Lavine v. United Rys. Co., 217 S. W. 574, 576; Ellis v. Metropolitan St. Ry. Co., 234 Mo. 657, 673.]

Plaintiff's instruction No. 1 was as follows:

"The court instructs the jury that if they believe from the evidence that an ordinance of Kansas City prohibited street cars from being operated on the streets of said city at a faster rate of speed than twelve miles per hour, and that plaintiff on or about the time in evidence saw a car of defendant approaching from the south at a distance of about 150 feet or more, and that plaintiff at the time thought that said car was moving not faster than the ordinary rate of speed, and that plaintiff at the time was not upon the track of defendant, and, thinking that he would have time to cross defendant's tracks, he started for that purpose, and that said street car was running at a speed of twenty-five or thirty miles an hour, and that by reason of said rapid rate of speed, while plaintiff was crossing the eastern track upon which said approaching car was coming, plaintiff found himself in a position of peril, and, confused thereby and by other

noises, and that plaintiff was confused, and when so confused plaintiff attempted to hurry across the track in front of the approaching car and that by reason of the excessive speed of said car, if the jury find the speed of the car was excessive, as aforesaid, plaintiff was struck and injured, then the jury will find for the plaintiff, provided they further find that in all the acts of plaintiff aforesaid plaintiff was in the exercise of reasonable care, as defined in other instructions herein."

The contention that the instruction is erroneous because under plaintiff's own evidence he was guilty of contributory negligence has already been answered.

The matters in the instruction relative to the car being 150 feet or more away and as to what plaintiff thought as to the car going not faster than ordinance requirements are not comments on the evidence, nor are they made elements of liability, but relate solely to whether plaintiff was guilty of contributory negligence or not. This issue was not pleaded by defendant, and hence it was unnecessary for plaintiff to assume the burden of the issue whether he was guilty of contributory negligence; but we cannot see how defendant was harmed thereby. [Harrington v. Dunham, 273 Mo. 414, 428; Meily v. St. Louis, etc., R. Co., 215 Mo. 567, 587; United States Fashion, etc., Co. v. Montrose Cloak, etc., Co., 218 S. W. 867, 869; Farmers' Loan and Trust Co. v. Southern Surety Co., 226 S. W. 926, 935.]

The instruction is not contrary to plaintiff's own evidence; nor did it tell the jury merely that if plaintiff thought he had time to cross and attempted to do so and the car was running at an excessive speed, they should find for him. It expressly required the jury to find that the excessive speed, if any, caused the injury and that plaintiff was in the exercise of ordinary care.

The form of the verdict, as given by the court in its instruction, read: "We, *the jury,* find" etc., if the verdict was agreed to by all the jurors; but, in the event the verdict was agreed to by nine or more and less than

twelve jurors, it should read: "We, *the undersigned jurors,* find" etc. The verdict, as returned, read: "We, *the jury,* find the issues" etc., but it was signed by only nine of them. This is the only thing complained of. In all other respects the verdict was properly signed, returned, received, accepted and ordered recorded by the court. There is no merit in the contention that the verdict, signed by only nine jurors, read: "We, *the jury,* find" etc. instead of "We, *the undersigned jurors,* find" etc. The verdict being agreed to by nine and less than twelve jurors, and being signed by them, it complied with all legal requirements, as the statute nowhere says that the words "undersigned jurors" shall appear in the verdict but merely that if it it rendered by a less number than the entire panel it shall be signed by all the jurors who agree to it. [Sec. 6629, R. S. 1919.]

Finding no substantial error in the record, the judgment is accordingly affirmed. All concur.