B. H. JACKSON, RESPONDENT, v. MISSOURI PACIFIC RAILWAY CO., APPELLANT.

In the Springfield Court of Appeals. August 14, 1931.

*Thos. J. Cole* and *Dearmont & Russell* for appellant.

*L. E. Tedrick* and *Phillips & Phillips* for respondent.

BAILEY, J.—Plaintiff brought suit for damages arising out of personal injuries sustained by him when caught between two of defendant's trains running in opposite directions on defendant's

tracks and in its yards within the city of Poplar Bluff, Missouri. The petition alleged that on July 12, 1929, plaintiff was walking between defendant's main track and one of its side tracks at a point on defendant's right of way habitually and constantly used for many years by pedestrians as a footpath. The negligence alleged is that defendant's agents and servants in charge of its north bound passenger train, negligently drove same at a dangerous rate of speed, contrary to and in violation of a certain ordinance of the city of Poplar Bluff limiting the rate to eight miles per hour. It is further charged that, as a result of said negligence, plaintiff was caught between said rapidly moving passenger train and a slowly moving freight train on said side track and was hurled with great violence against the sides of said train, sustaining the injuries complained of. The answer contained a general denial and a further plea that plaintiff's injuries, if any, were caused solely by the negligence of plaintiff in failing to look or listen for the approaching train and in walking too close to the moving freight train. On a trial to a jury the verdict and judgment was for plaintiff in the sum of $7000. Defendant appealed to this court which rendered an opinion during the October Term, 1930, affirming the judgment. Thereafter, a motion for rehearing was sustained there being some doubt as to the correctness of our conclusions on certain phases of the case hereinafter referred to.

Defendant makes no serious contention on this appeal that the plaintiff failed to make a prima-facie case of negligence. There was ample proof that defendant's train was, at the time and place in question, being operated in the city of Poplar Bluff at a rate of speed in excess of that permitted by ordinance. The violation of the speed ordinance was negligence *per se*. [Gibson v. Frisco, 9 S. W. (2d) 85.]

But defendant contends that the speed of the train was known to plaintiff and, therefore, the fact that defendant's train was exceeding the speed limit did not excuse plaintiff for his own negligence which, it is asserted, was the proximate cause of his injuries. Upon that theory defendant urges that the court erred in failing to give its instruction in the nature of a demurrer to the evidence.

When considering the propriety of giving such an instruction the evidence must be considered in the light most favorable to plaintiff and all plaintiff's evidence, if not beyond reason, accepted as true, while all the evidence of defendant in conflict therewith should be disregarded. [Compton v. Const. Co., 287 S. W. 474, 315 Mo. 1068; Holman v. Frisco, 278 S. W. 1000, 312 Mo. 342.]

Plaintiff's evidence tended to prove a state of facts about as follows: Plaintiff at the time he was injured was employed at defendant's round house located southeast of Poplar Bluff. On July 12, 1929, at about 7:00 A. M., plaintiff started walking from his home

to his place of work. In going to work he had crossed a bridge over Black River which brought him to defendant's railroad tracks. These tracks consisted of a main line track and a number of passing and side tracks, all parallel to each other and running north and south. At a point about a quarter of a mile south of defendant's depot, which was west of the tracks, these tracks were crossed by a city street known as Henderson Avenue, near which point the accident occurred. Plaintiff had walked south between defendant's tracks from the depot to about the north side of this Henderson Avenue crossing, while at the same time a slowly moving freight train was on a south bound or side track to plaintiff's left. To his right was defendant's said main line north-bound track. The distance between the east rail of the north-bound track and the west rail of the south-bound track was eight or ten feet. When plaintiff reached the north side of Henderson Avenue he had arrived at a point where he would ordinarily cross the south-bound track, and other tracks to the east, in order to reach his place of work. Plaintiff testified in regard to the accident as follows: "I walked down the track nearly to the crossing and heard a whistle blow and looked up and it was the passenger train coming, it was about twenty feet from me, I guess. This freight train was just east of me. I was going the same way the freight train was going and it was right over to my left, and the passenger train was coming the other way on the track just west of the track the freight train was on. The freight was a long train—the one that cut me off. I was walking along the side of the freight train and we were both going south. The track which the passenger train was on was about seven or eight feet west of the track the freight was on. The box cars and coaches on these two trains are some wider than the tracks, I suppose—I heard a whistle and looked up and saw the passenger train coming, then I jumped over between the two trains. When the engine of the passenger train passed me, the wind from the coaches drew my feet from under me and pushed me over against the freight train. The passenger train was going north and the freight train going south. I was walking between the tracks when I was pushed over. I don't remember if I had been on the track at all, but I was in between them at that time. I suppose I was seven or eight feet from the Henderson Avenue crossing when I first learned that a passenger train was coming. I was north of the passenger train about twenty-five feet, I guess, it was just below the crossing. Right below the crossing, the track curves around this way (indicating), going southeast, and the freight train cut me off from seeing any farther down than just below the crossing. I suppose the passenger train was late, though I don't know what time it was due here. I did not know there was a passenger train about due when I started down there.

"Q. What was it that threw you against the freight train? A. It was the wind from the passenger train. The passenger train was going thirty or forty miles an hour. When it threw me up against the freight train, it knocked me down."

On cross-examination he testified that, "I don't know that the passenger trains go north on the east track and the south-bound trains on the west track. I have lived here four years, and had been working down there, but I don't know how long, I never kept account of it. I don't know which way these trains go, I never did keep track of that. I stopped when I got to Henderson Avenue. If I hadn't, I would have got killed. I stopped there before I saw any train at all. I was waiting for the freight train to pull out of the way so I could get across the track there. I did not go across Henderson Avenue, I was waiting for the caboose to get by so I could go on to my work. That was the best place for me to cross over and I was waiting there. I did not see the passenger train nor hear it until it whistled there. I never looked until the passenger train whistled. I did not hear the gate man holler at me."

He further testified that the train was going forty miles per hour. His cross-examination continued as follows:

"Q. You think that passenger train had a force of wind as it came by? A. I don't think that. That is one thing that I know. I fought that thing to keep from getting killed. The wind from that passenger train is what threw me against the freight train. It was enough to throw a mule against it. I was standing there at the edge of the track. I was waiting for the freight train to get by. When the fireman or engineer on the passenger train jerked his cord three times I looked up. I saw the train and jumped over and it swiped by me. I kept trying to pull toward the crossing until it threw me against the side of the freight train. It was just a second or two from the time I first saw that train till it knocked me down. The engine of the passenger train had already passed me when I fell. I don't know if the engine made any wind or not. I was clear of both trains and both engines had passed me when the wind knocked me down. I was still standing up when the engine passed me. I stood up all the time until the wind came along that threw me off my feet."

It stands admitted that the tracks of defendant at Henderson Avenue and immediately north of Henderson Avenue at the point where plaintiff was injured, were constantly used, and had been for many years, by the public as a foot path and that defendant had knowledge of such long continued user. There was negative testimony to the effect that the whistle on the passenger train in question did not blow nor the bell ring until the passenger train was right at the crossing.

Defendant's engineer operating the locomotive on the passenger train testified he saw plaintiff when the train was about two hundred feet from him and then gave sharp blasts of the whistle; that the train was moving about eight miles per hour; that he could not see the man any sooner than he did on account of the curve and the string of box cars.

The foregoing extracts from the evidence contain substantially all the evidence that, for the purposes of this appeal, might have a bearing upon the question of plaintiff's negligence. Defendant cites a number of cases to support the proposition that plaintiff was negligent as a matter of law, and that such negligence was the proximate cause of his injury, viz.: Morrow v. Hines, 233 S. W. 493; Green v. R. R. Co., 192 Mo. 131, 90 S. W. 805; Burge v. R. R. Co., 244 Mo. 76, 148 S. W. 925; Osborn v. Ry. Co., 179 Mo. App. 245, 166 S. W. 1118; Laun v. Ry. R. Co., 216 Mo. 563, 116 S. W. 553.

These cases develop the general proposition that a railroad track is a warning of danger and any person who goes upon it proposing to cross, must use his eyes and ears to avoid injury; that while a neglect of regulations in running trains amounts to negligence on the part of the railroad, that rule does not absolve a pedestrian or others attempting to cross a railroad track from exercising ordinary care. But none of defendant's cases seem to reach the point here involved. It is conceded that plaintiff was in a place which by long user and acquiescence on the part of the railroad had become a public passway and plaintiff was there as an invitee. It was therefore defendant's duty to be on the look-out for persons at that point and to exercise reasonable care to avoid injuring them. [Thompson v. Railroad, 243 Mo. 336, 148 S. W. 484; Ahnefeld v. Railroad, 212 Mo. 280, 111 S. W. 95.]

If defendant was operating its train at this point at the rate of forty miles per hour not only was the city speed ordinance violated but there was a failure to exercise such reasonable care. Plaintiff, on the other hand, was not a trespasser. It is true, however, he was at all times under the duty of exercising ordinary care for his own safety and if his failure to do so resulted in the injury complained of, he was not entitled to recover. But before we may say he was guilty of negligence which, as a matter of law, was the proximate cause of his injury, we must say, as a matter of law, that no reasonably prudent person would have acted as plaintiff did. Plaintiff's position in walking along these tracks was comparatively safe, and he cannot be said to have had reason to have anticipated any unusual or sudden peril. It was a place constantly used by pedestrians and known to be so used by defendant's servants and those in charge of its trains. Plaintiff did not anticipate the danger of a fast moving train running at a speed far in excess of the limit provided by ordinance, at a street crossing and at a place notoriously

used just as he was using it and we do not think the duty was cast upon him to do so. His contributory negligence was, we think, clearly a question for the jury. [Brown-Scott v. Davis, 216 Mo. App. 530, 270 S. W. 433; Scullin v. Railroad, 184 Mo. 695, 83 S. W. 760; Thompson v. St. Louis Southwestern Ry. Co., 243 Mo. 336, 148 S. W. 484; Lynch v. Railway, 111 Mo. 601, 19 S. W. 1114; Garrett v. Wabash, 159 Mo. App. 63; Frankel v. Hudson, 196 S. W. 1121, 271 Mo. 495.]

Plaintiff's position at the time the passenger train was first seen by him necessitated quick action on his part. Whether he would have had time to have run across the main line track to the west is questionable. He stepped to the east where he would have been comparatively safe but for the excessive speed of defendant's train. [Frankel v. Hudson, 195 S. W. 1121, 271 Mo. 495; West v. K. C. Rys., 232 S. W. 749, 208 Mo. App. 181.]

It will be observed this case is unusual in that plaintiff, although situated in close proximity to both the passenger and freight trains, was not struck by the passenger train but forced against the freight train by the force of wind produced by the speeding passenger train.

In its original brief defendant apparently placed little stress upon the point which it now makes, i. e., that there was no evidence that the principle upon which plaintiff's case is founded (the force of the wind) was known to defendant, or, if known, could have been guarded against and that therefore defendant cannot be held. In support of this proposition defendant relies upon Graney v. Railway Co., 157 Mo. 666. The facts in the Graney case, which occurred in St. Louis, are thus stated in the opinion: "On Sunday afternoon, January 18, 1891, James Graney, then eleven years and nine months old, and four other boys, went down Dorcas street from the west, intending to cross the railroad track and go down within half a block of the Mississippi River to a trestle used for the track from the Anheuser-Busch brewery, where hops were deposited after being used. When close to the crossing a freight train of twenty-three cars, drawn by an engine, came to the crossing from the south on the east track, at the rate, it is said, of twenty miles an hour. James Graney stood between the two tracks, two or three feet from the west rail of the east track on which the train was passing. When about one-half or two-thirds of the train had passed, witnesses testify that he whirled around and fell upon the ground, and that his legs got upon the rails and the cars passed over them, from the effects of which injury he died the next day.

"The boy is said to have weighed sixty-three pounds, but there is not a particle of evidence on this subject, except an estimate of his weight by his mother, and by the undertaker. It was also in evidence that the boy lived but a little way from the railroad tracks, and was

quite expert in, and in the habit of, hopping on and off the passing trains; and was a bright, active intelligent boy.'' [1. c. 673-4.]

The only evidence as to the force of the wind or suction that might be generated by a fast moving train came from two university professors who testified a train travelling at twenty miles per hour would produce a blow of air sufficient to topple a person over standing near the train. In regard to the expert testimony, Judge SHERWOOD, who wrote the opinion, said: ''Of course such testimony to dignify it by that title, with neither knowledge nor experience on which to base it, or with which to back it, is simply worthless; neither courts nor juries are required to believe it; if they do, the esophage of their credulities must be abnormally dilated, or else permanently enlarged. Opinions such as these, grounded on mere conjecture or speculation, are inadmissible.'' [1. c. 682.]

The court in deciding there was no liability, used this language: ''But it may be conceded that the testimony referred to in the just completed paragraph was really testimony, and sustained the allegations of the petition as to the boy being sucked under the cars by the current of air put in motion by the forbidden speed of the train; still plaintiffs, having proved that, cannot recover, because there is no evidence that the principle on which plaintiffs' petition is founded, was known to defendant, or if known, could have been provided against. No man is required to anticipate an accident that has never occurred before, or held negligent if he fails to do so. Were the rule otherwise, it would be a lasting and indelible reproach to law, justice, common reason and common sense.'' [1. c. 683.]

This opinion was in banc, the court being divided four to three. But two judges concurred *in toto* with Judge SHERWOOD. The court was far from certain on this interesting and vexed question as indicated by the fact that when the cause was first before the Supreme Court, in an opinion by Judge MACFARLANE (140 Mo. 89), it reached an opposite result. The last opinion by Judge SHERWOOD is, of course, the controlling authority. The question is whether or not that opinion is conclusive of the present case. There is a substantial and vital difference as to the facts. In the Graney case the speed of the train was much less and there was no direct evidence that the train sucked young Graney under the wheels. In the case at bar plaintiff testified most positively that the wind from the passenger train threw him against the freight train. He said ''it was enough to throw a mule against it.'' He was, moreover, in a sort of pocket, with no chance to escape the effect of the fast moving train. Had there been such direct and positive evidence in the Graney case we apprehend a different result would have been reached. There was no competent evidence in that case that the wind had anything to do with the accident. But in our case at bar, this proof was supplied in most positive terms and afforded a sound

basis for the jury's verdict. The point that defendant had no knowledge of the physical fact that the train produced a dangerous air current is answered, we think, by later decisions of our Supreme Court.

In considering an unusual injury to plaintiff, the Supreme Court said: "The substance of the contention for defendant is that the manner of the plaintiff's injury, as related by him, the manner in which he said he fell on the tracks, is unnatural and improbable, so much so that his injury cannot be regarded as a natural and probable or legal consequence of the claimed negligence. This, in effect, is saying that, conceding defendant's negligence, and plaintiff's injury in the manner in which he said it occurred, it was so exceptional in manner of occurrence that it could not reasonably have been anticipated to follow as the consequence of the alleged negligence, and hence there is no liability. It is not a necessary condition that the defendant did or could have foreseen the very injury complained of. In Washburn v. Laclede Gas Light Co., 202 Mo. App. loc. cit. 115, 214 S. W. 414, also a case cited by defendant, there is statement of another rule to be borne in mind:

" 'The liability of a person charged with negligence does not depend on the question whether with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.'

"The rule with some added qualification is stated in Buckner v. Horse & Mule Co., 221 Mo. loc. cit. 710, 120 S. W. 769, as follows:

" 'It is not essential that defendant could have anticipated the very injury complained of, or that it could have anticipated that it would have occurred in the exact manner in which it did occur, but it is sufficient if the negligence of the defendant was the proximate cause of the injury.' " [McCray v. Missouri, K. & T. Ry. Co., 10 S. W. (2d) 936, l. c. 937.]

In the note to Louisville & Nashville R. R. Co. v. Lawson, L. R. A. 1917, B. p. 1164, it is pointed out that "Whether or not the danger of a person beside the track being sucked under a rapidly moving train is such an occurrence as should reasonably be anticipated by the railroad company, so as to render it liable for the injury, is an interesting question, as to which there seems to be a difference of opinion among the authorities. In the majority of the cases, it has been apparently assumed that an injury of this kind is one which should be reasonably anticipated."

Recovery under circumstances similar to the case at bar, is not uncommon but has been sustained in a number of cases. [Munroe v. Pennsylvania R. R. Co., 85 N. J. L. 688; Schultz v. N. Y. S. & W. R. Co., 87 N. J. L. 659; Craslin v. Penn. Ry., 87 N. J. L. 11; Rich-

ardson v. Detroit & M. R. Co., 176 Mich. 413, 142 N. W. 832; Paulding v. New York C. & H. R. R. Co., 132 App. Div. 68, 116 N. Y. Supp. 518.]

In the case at bar, it is a matter of common knowledge, that if defendant's train had been running at eight miles per hour as provided by the ordinance pleaded, there would have been no appreciable air force. But when running at forty miles per hour, as shown by plaintiff's evidence, there was bound to have been a displacement of air and a force of wind in relative proportion to the excessive speed. The evidence shows plaintiff had stepped into a place where he would have been reasonably safe had the train been operated within the speed provided by law. He stepped into that space when he first saw the train such a short distance away and travelling and at such speed that, according to his own evidence, he had insufficient time to step to the west. Defendant's conduct in operating its train at an excessive rate of speed within the limits of a populous city, contrary to law, and at a place well known to be constantly used by pedestrians, was, we think, the proximate cause of the injury.

In view of the different state of facts here presented, we do not consider the Graney case, supra, in point and therefore not a controlling authority. The cause was one which presented a jury question and their verdict is binding on us. The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.