action. It is difficult to see what more the master could have done, except to put a catch or fastening over the opening in the slot to hold the bar down. But the master is not bound to provide appliances in connection with the place where the servant is at work which make accidents impossible. It is enough if he exercise reasonable care in that regard. Smith v. Long Island Railroad Co., 129 App. Div. 427, 114 N. Y. Supp. 228. When an appliance has been in use for a long period of time, and has proved safe and adequate for the purposes for which it was intended, negligence cannot be predicated upon the continued use of such appliance. Paul v. Consolidated Fireworks Co., 133 App. Div. 310, 117 N. Y. Supp. 698; Loftus v. Union Ferry Co., 84 N. Y. 455, 38 Am. Rep. 533; Burke v. Witherbee, 98 N. Y. 562.

It would seem that there can be but two efficient causes for the displacement of this bar on the occasion when the plaintiff was injured. Either some of the appliances connected therewith broke, permitting the bar to slip out, or, after being removed for the last time preceding the accident, the bar had been carelessly replaced by some one. If it were the former, it would devolve upon the plaintiff affirmatively to establish it. Carney v. Minnesota Dock Co., 191 N. Y. 301, 84 N. E. 62. Not only has he failed to establish this, but the undisputed evidence is to the contrary. There is no evidence that the carelessness in replacing the bar was an act of any one for whose acts this defendant is responsible.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur, except WOODWARD and MILLER, JJ., who dissent.

---

TRIEBER v. NEW YORK & Q. C. RY. CO.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. CARRIERS (§ 347*)—FAILURE TO STOP ON SIGNAL—CONTRIBUTORY NEGLIGENCE.

A street car track was built within 5½ feet of a wire fence on one side of the street, so that when a car passed there was a clear space between the car and fence of about 4 feet. There was no sidewalk there; but pedestrians were accustomed to walk there, and the street cars were accustomed to stop anywhere along there to discharge passengers, or on signal to receive them. Rough ice and snow had formed on the clear space, making an incline towards the tracks. Decedent walked along on such space, and attempted to signal a car, which, however, ran by without slackening speed, and inflicted injuries resulting in his death. Held, that he was not negligent as matter of law in being where he was when injured.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 347.*]

2. CARRIERS (§ 287*)—STREET RAILROADS—DUTY TO STOP AT CUSTOMARY PLACE ON SIGNAL.

If street railroad cars were in the habit of stopping on signal at a certain place, the failure to do so, resulting in injury to the person signaling, would constitute negligence.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 287.*]

3. STREET RAILROADS (§ 93*)—OPERATION—ABSENCE OF HEADLIGHT.

Running a street car after dark without a headlight would be negligent.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 93.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Queens County.

Action by Sarah J. Trieber, executrix of William Trieber, deceased, against the New York & Queens County Railway Company. From a judgment. of nonsuit, and an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, and MILLER, JJ.

Aaron P. Jetmore, for appellant.

Bayard H. Ames (John Montgomery, on the brief), for respondent.

MILLER, J. The plaintiff contends that there is evidence tending to show that her intestate, without fault on his part, was struck by one of defendant's trolley cars, and received injuries from which he died, and that the accident was due to the defendant's negligence. The accident occurred about 20 minutes after 6 o'clock on the evening of January 31st, on the south side of Newtown avenue, a short distance east from its junction with Flushing avenue. On that side of the street the space between the defendant's tracks and a wire fence on the side of the street was only about 5 feet 6 inches. The overhang of the car was 18 or 20 inches, so that there was a clear space between the car and the fence of about 4 feet. There was no sidewalk on that side of the street; but pedestrians were accustomed to walk there, and there is evidence that the defendant's cars were accustomed to stop anywhere along there to discharge passengers, or on signal to receive them. Snow had fallen the day before, and had been swept off the car tracks by the defendant's sweeper. Rough, frozen ice and snow had thus formed on an incline toward the tracks. Just before the accident a person on the opposite side of the street observed the intestate walking west on the narrow space on the south side of the street, between the tracks and the fence, and saw him raise his cane as though signaling to a car, which was approaching from the west, to stop; and, just before the car reached him, the intestate was seen to turn, as though making an effort to seize hold of the fence. The car passed without slackening its speed, the intestate's hat was carried along by suction, and he was found lying on the ground, near or partly upon the track, with his clothing torn, and with two lacerated scalp wounds, sufficient to cause his death. The headlight of the car was not lighted.

It seems to me that nothing is left to conjecture respecting the movements of the deceased immediately prior to the accident. There is evidence which would justify the inference that he had alighted from a car at the junction of Flushing and Newtown avenues, and had walked up Newtown avenue while waiting for another car; and either discovering the dangerous footing by the side of the tracks had turned back, or, on hearing the approaching car, had turned to signal it to stop. I do not discuss that evidence, because it seems to me wholly immaterial how he happened to be where he was. It was a public street, where pedestrians were in the habit of walking, and where the public were in the habit of boarding and alighting from cars, and the deceased had a right to be where he was. The evidence plainly shows that he tried to stop the car, evidently with the purpose of boarding it, and the inference is certainly warranted that, when he observed the speed of the car

and the fact that it was not going to stop, he appreciated his danger and tried to save himself by grasping the fence, and that, because of the suction of the car, or the uncertain footing, or both, he was drawn or fell against the car, and thus received the injuries from which he died. It could not be said that he was guilty of contributory negligence as matter of law, for he had a right to assume that the car would stop on his signal, as had theretofore been the practice. If the car had stopped, as he had a right to expect, the dangerous situation would not have arisen.

The only question, then, is whether the defendant was negligent in not stopping the car. The appellant's counsel asserts that the defendant was negligent in 14 different respects, and it may be that, in the multiplicity of grounds, he failed to call the attention of the trial court to the real one. If the defendant's cars were in the habit of stopping on signal at the point where the deceased was, it was plainly its duty to stop this particular car, and the jury would be justified in finding that its failure to do so constituted negligence. Probably the motorman did not see the deceased, either because of inattention, or because the headlight was not lighted. In either case he was careless, for certainly a jury would have little difficulty in saying that a motorman who ran a car after dark without a headlight was negligent.

The respondent relies on the case of Lamb v. Union Ry. Co., 195 N. Y. 260, 88 N. E. 371. In that case it was held that the decision of this court disregarded the familiar rule that inference could not be based on inference, or presumption upon presumption; but that case was in no respect like this. Here there was an eyewitness, who saw the entire occurrence, except for the brief interval of time when the car was between her and the deceased, and the inference as to what occurred during that time is based, not on inference, but on facts sworn to by her. In respect to the other cases cited to sustain the judgment, it is sufficient to say that we have examined them, and find none of them applicable to the facts disclosed by this record.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.