14679

HORNE v. SOUTHERN RAILWAY COMPANY ET AL.

(197 S. E., 31)

April, 1937.

*Messrs. Frank G. Tompkins, Nathaniel B. Barnwell, Lionel K. Legge* and *M. S. Connor,* for appellants,

*Messrs. Robinson & Robinson* and *J. D. Parler,* for respondent,

May 4, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an action under Lord Campbell's Act for the wrongful death of respondent's intestate, alleged to have been caused by the negligence of appellants.

There are fourteen specifications of negligence in the complaint, but we set out only specifications (a), (b), (c), (d), and (f):

"(a) In failing and omitting to keep a proper lookout on the said train when approaching the flag station at Byrd's when they knew or should have known that persons regularly stood near their tracks for the purpose of flagging the said train at the said station, and when they knew or should have known that in failing so to do, they were liable to injure prospective passengers.

"(b) In approaching the flag station at Byrd's at a high and dangerous rate of speed when they knew or should have known that prospective passengers usually and customarily flagged the said train at said station, and when they knew or should have known that the custom of the said passengers was to stand near the said track for the purpose of flagging the said train, and when they knew or should have known that a person standing near the tracks for the purpose of flagging the train was liable to be sucked under, into and against the said train as and if it passed by at a rapid rate of speed.

"(c) In failing and omitting to heed the stop signal placed at the flag station at Byrd's by the Defendants and in

not bringing their train down to a reasonable rate of speed and in not approaching the said flag station with reasonable care and caution when they knew or should have known that failure so to do was liable to injure the Plaintiff's intestate.

"(d) In failing and omitting to bring the said train under control and down to a reasonable rate of speed after they saw, or by the exercise of ordinary care would have seen the Plaintiff's intestate standing near the tracks ahead, and when they knew or should have known that failure so to do was liable to injure the Plaintiff's intestate."

"(f) In running the said train at a high and reckless rate of speed at and by the station of Byrd's after they saw or by the exercise of ordinary care could have seen, Plaintiff's intestate standing near the tracks and when they knew or should have known that to have run the said train past the said station at such a high rate of speed the train was liable to suck or draw the person of the Plaintiff's intestate into or against the said train and injure him."

The answer of appellants in effect was a general denial, and the plea of contributory negligence.

When respondent rested her case, appellants moved for a nonsuit on the grounds that the testimony was susceptible of only one reasonable inference, and that was that there was no evidence of negligence on the part of appellants or either of them which was a proximate cause of the death of respondent's intestate; and that no other reasonable inference could be drawn from the evidence than that the death of respondent's intestate was his own negligence, and due to and caused by his own contributory negligence. This motion was refused.

At the conclusion of all of the testimony, appellants moved for a directed verdict on the same grounds as for a nonsuit, which motion was likewise refused.

Before the Court charged the jury, respondent's counsel announced that respondent would not ask for punitive damages. It is for this reason that we have hereinbefore referred

to only the charges and countercharges of negligence of the respective parties to this suit.

The jury returned a verdict for respondent in the sum of $2,500.00 actual damages. Appellants moved for a new trial, and this was refused.

The appeal is here upon exceptions to the refusal of the trial Judge to order a nonsuit, or direct a verdict; and alleged error in his charge to the jury. The issues thus made require a brief statement of the testimony for a proper understanding of the case.

On the night of January 17, 1934, about seven o'clock p. m., respondent's intestate, a white farmer of Dorchester County, went to a flag station known as Byrd's, on the line of appellants, to flag and become a passenger on appellant's train from Charleston to Columbia, which he wanted to ride as far as St. George, where he resided. He owned and operated farms or a farm near Byrd's, and over a long period of years was accustomed to flag trains of appellants at this point and become a passenger. In other words, he was entirely familiar with the manner of flagging the train in order to become actually a passenger thereon. Appellants maintained a little shed and platform at Byrd's, the platform being about on a level with the top of the rails. On the top of the station shed is a semaphore which one uses to flag the train by pulling down a little board, the arm. When the train is to be stopped, the arm is straight down. In addition to this, in the nighttime, it was customary for passengers to flag with a light; the usual method being to wave a lighted or burning newspaper. For a considerable distance in each direction the track of appellants is straight and level, and it was in testimony that on a clear night this board or arm could be seen by reason of the electric headlight on the engine, for a distance of about one-half mile. It was in testimony that this was a clear night, and nothing to obscure the vision of the engineer. However, there was also testimony to the contrary, and that smoke from a woods fire made the visibility low. It is in the testimony that the arm had been

pulled down, and the train was also flagged by the waving of a burning newspaper by respondent's intestate who stood in front of the station shed about five feet from the track; and that about two feet back of him, the witness, William Harbinson, who had driven the intestate to Byrd's, was waving a handkerchief. There is a conflict in the testimony as to the signals given by the engineer in approaching the station, but we do not find in the record any positive testimony that two blasts of the whistle were sounded, which is the customary manner of acknowledging the flag signal. However, there is testimony that the flag signal was not always acknowledged or recognized by the blowing of the whistle, or otherwise. There is testimony to the effect that the train was flagged, not only by the dropping of the semaphore arm, but by the waving of a lighted newspaper in ample time for the train to have been stopped at the station had the engineer and fireman kept a proper lookout for such flag station. The fireman on the train testified that he saw two men at the station when the train was about three hundred feet away, one having a light, and the other waving a handkerchief, and that he notified the engineer who applied the brakes. There is testimony that the train passed the station at an estimated speed of from fifty to sixty miles per hour, and did not come to a stop until it had traveled between one-half and three-fourths of a mile beyond the flag station; and it was not stopped and backed to the station because of the accident, but for the purpose of taking the deceased on the train as a passenger. The train crew did not learn of the injury to the deceased until the train was backed to the station.

The witness, Harbinson, who was assisting flag the train, testified that one of the coaches in the train of cars came in contact with respondent's intestate, resulting in his death, and this is not disputed, unless it be said that the deceased came in contact with the coach or car. Harbinson, although standing farther back from the on-rushing train than was the deceased, testified he was pushed back by the current of

air produced by the speeding train. There is considerable testimony in the record with reference to the effect it would have on a person standing in close proximity to a train rushing by at high speed—if the air thus forced out and away from the train would have only the tendency to push one away from the train, or if it would not first have this tendency, and then be succeeded by the tendency of the air to return to the space from which it had been forced, and thus pull or suck such person back towards the fast moving train, or if the vacuum thus created would undertake to fill until after the train had entirely passed.

It is the theory of respondent that her intestate was sucked back to and against the fast-moving train, and thus received the blow that resulted in his instant death. There was testimony that respondent's intestate had been drinking intoxicating liquor to the extent that he was under the influence thereof, but there was other testimony that he had taken but one drink, and was not affected thereby. It is the theory of appellants that the deceased was under the influence of liquor and staggered or fell against the moving train, while carelessly and negligently standing too close to its track and the moving train.

It is of course obvious that the deceased had to move or be moved from the place and position in which he was standing when the train first commenced to pass in order to come in contact with one of the coaches, the third or fourth in the train.

In passing upon the questions if the trial Judge erred in refusing appellants' motion for a nonsuit and motion for a directed verdict, it would appear necessary to first discuss if there was sufficient testimony to submit to the jury the status of the deceased at the time of his injury, that is, if he was a mere licensee or a passenger.

If there was testimony from which a jury could find that respondent's intestate was constructively a passenger—if such a reasonable inference could be drawn from the testimony, and it was also a reasonable in-

ference that the intestate was injured by an instrumentality of appellants—then a presumption of negligence is created on the part of appellants. The duty owed by a common carrier to its passengers is much higher than the duty owed to other individuals, and there is a presumption of negligence on the part of the carrier whenever the fact appears that a passenger has been injured by an instrumentality of the carrier. This is such a well-established principle of law in this jurisdiction as not to require supporting citation of authority.

In *Taylor v. Railroad Co.,* 78 S. C., 552, 59 S. E., 641, Mr. Justice Jones, in writing the opinion of the Court, stated (page 642): "When one is on the carrier's station premises with a *bona fide* purpose of becoming a passenger, within a reasonable time before the departure of the train to be boarded, he is entitled to protection as a passenger." Citing *Johns v. Railway Co.,* 39 S. C., 162, 17 S. E., 698; *Holcombe v. Railway Co.,* 66 S. C., 6, 10, 44 S. E., 68, 70.

In *Mitchell v. Railway Co.,* 87 S. C., 375, 380, 381, 69 S. E., 664, 31 L. R. A. (N. S.), 442, the Court quoted with approval from 5 Am. & E. Ency. of Law, 2d Ed., 488, as follows (page 666): " 'The relation of carrier and passenger begins when one puts himself in the care of the carrier, or directly within its control, with the *bona fide* intention of becoming a passenger and accepted as such by the carrier. Seldom, however, is there any formal act of delivery of the passenger's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation; hence the existence of the relation is commonly to be implied from the circumstances attendant. The rule is that these circumstances must be such as will warrant an implication that one has offered himself to be carried, and that the offer has been accepted by the carrier. In Elliott on Railroads, § 1597, it is stated: "A person may become a passenger before he has entered the train or vehicle of the carrier. We think it safe to say that a person becomes a passenger when, intending to take passage, he

enters a place provided for the reception of passengers as a depot, waiting room, or the like, at a time when such a place is open for the reception of persons intending to take passage on the trains of the company." ' "

Following the above quotation, the opinion continued: "The annotator in *Webster v. Ry.* (Mass.), 24 L. R. A., 521, thus summarizes the result of the decisions: 'Considering all the decisions on the subject, which establish quite clearly that a person may sometimes be a passenger when attempting to take a train, although he has not yet got upon the car or even procured his ticket, there seems to be no other limitation of the rule so satisfactory as that he must, in order to be regarded as a passenger, present himself in a proper place and in proper manner, because he cannot be presumed to have an invitation to present himself in any other way.' "

A good general statement as to when the relation of carrier and passenger commences, is contained in Moore on Carriers, 2d Ed., Vol. 2, p. 954, § 4, and here reproduced: "The general rule is that any person whom a common carrier has contracted, expressly or impliedly, to convey from one place to another, in consideration of the payment of fare, or its equivalent, and who, in the course of the performance of such contract, has been received by the carrier under its care, either upon the means of conveyance, or at the point of departure of that conveyance, is a passenger. In order to establish the relation of carrier and passenger, the person claiming to be a passenger must have put himself into the care of the carrier for the purpose of being conveyed, and the carrier must, impliedly at least, have accepted him as a passenger. The acceptance of a passenger need not be direct or expressed, but there must be something from which it may be fairly implied. One becomes a passenger on a railroad when he puts himself into the care of the carrier to be transported under a contract, and is received and accepted as such by the carrier; and, while the relation is commonly to be implied from circum-

stances, those must be such as to warrant an implication that the one has offered himself to be carried, and the other has accepted his offer and received him, and, while the existence of the relation is in controversy, the question is whether the person has presented himself in readiness to be carried under such circumstances in reference to time, place, manner and condition that the carrier must be deemed to have accepted him as a passenger. In order to be a passenger it is not necessary to have a ticket, or to be actually upon the carrier's train; but if there is a *bona fide* intention by one injured, at the time of the accident, to board the carrier's train, and if the carrier had knowledge of that fact, or if the acts and conduct of the injured party and the other circumstances were such as to reasonably notify the carrier that he intended to board the train, he is entitled to such care and protection from the carrier as is required where the relation of carrier and passenger exists."

When a person goes to a railway station a reasonable time before the departure of a train, with the *bona fide* intent of becoming a passenger, is conducting himself in such a manner as to create the presumption that he would be accepted by the carrier as a passenger, and has used the recognized usual method or methods in force at such station of signifying his intention of becoming a passenger, there is an implied acceptance by the carrier of his offer to become a passenger, and he is, in law, a passenger, and entitled to the rights of a passenger while there intending to become a passenger and while he is in the place provided by the carrier for waiting or intended passengers.

In the case at bar, the record discloses, stating the testimony most favorable to the respondent, as must be done in passing upon the questions if a nonsuit or directed verdict should have been ordered, that respondent's intestate went to a station of appellants where passengers are accepted on flag, some considerable time before "train time"; that the deceased was accustomed to flagging appellants' trains scheduled to stop at this station on flag, and

becoming a passenger on such trains over a period of thirty years; that he went there on the evening he met his death with the avowed intention of becoming a passenger on appellants' train from this station to St. George, where he resided; that he followed minutely the customary methods of flagging the train; that while on the premises of appellants awaiting the arrival of the train, his conduct was such as to create the presumption that he would be accepted as a passenger; and that while on the premises of appellants, the place provided for passengers, he was hit and killed by an instrumentality of appellants.

Under these circumstances, therefore, it was a question for the jury, if in fact respondent's intestate was a passenger (*Martin v. Southern Ry. Co.,* 51 S. C., 150, 28 S. E., 303; *Iseman v. South Carolina & Ga. Ry. Co.,* 52 S. C., 566, 30 S. E., 488), and of course, if he was then there was thus created a presumption of negligence on the part of appellants.

While this presumption of negligence is rebuttable, we cannot say from the testimony that such presumption has been rebutted. The deceased had the right to expect his signal to be obeyed, and even though it may have been a night of low visibility at or near the station due to smoke from a woods fire, which is denied, he could assume that the speed of the train would be such that it could be stopped within the distance a signal could be seen; and that the train would not pass the station at from fifty to sixty miles per hour, in fact, would stop.

But the appellants say the signals to stop had not been acknowledged by two blasts of the whistle. It is in the testimony that the signal to stop is not always answered.

Aside from the presumption of negligence, there was sufficient evidence of negligence to take the case to the jury. We have hereinbefore set out the facts, and it was a question to be submitted to the jury if the agents of appellants were keeping the proper lookout for passengers intending to enter the train at this flag station, and if it was negli-

gence to run a train at a high speed past this station without ascertaining that no one was standing near its tracks, either as a passenger or licensee.

The position of appellants is that they had no knowledge of the physical fact that a train running at a high rate of speed would produce a dangerous air current, and might suck one standing near the track against the train, and that such one is equally chargeable with this knowledge, and it is contributory negligence to so stand near a fast-moving train. train.

While the theory of the manner or cause of the injury and death of respondent's intestate is new in this jurisdiction, yet such theory is not new in American jurisprudence. See the cases of *Rice v. Michigan Railway Co.,* 208 Mich., 123, 175 N. W., 454; *Richardson v. Detroit & M. Ry. Co.,* 176 Mich., 413, 142 N. W., 832; *Trieber v. New York & Q. C. Ry. Co.,* 134 App. Div., 661, 119 N. Y. S., 439; *Munroe v. Pennsylvania R. R. Co.,* 85 N. J. L., 688, 90 A., 254, Ann. Cas., 1916-A, 140; *Crotshin v. Pennsylvania R. R. Co.,* 87 N. J. L., 11, 93 A., 110; *Jackson v. Missouri Pacific Ry. Co.,* 226 Mo. App., 29, 42 S. W. 2d, 932. This last-cited case, in effect, overruled the principle of the *Graney case, Graney v. St. Louis R. Co.,* 157 Mo., 666, 57 S. W., 276, 50 L. R. A., 153, relied upon by appellants herein.

Liability for negligence is not predicated upon the necessity that the wrongdoer should foresee that an injury would result from his wrongdoing. It is sufficient that in view of all the circumstances, he should have foreseen that his negligence would probably result in injury of some kind to some one. *Sandel v. State,* 115 S. C., 168, 104 S. E., 567, 13 A. L. R., 1268.

We quote with approval from *Sandel v. State, supra,* at page 177 of the S. C. Reports, at page 569 of 104 S. E.: "The difference between intervening and concurring causes appears to have been overlooked. In operation an intervening cause succeeds or follows that which,

for convenience, is called the primary cause, though, as we have seen, it is only the remote cause; but concurring causes operate contemporaneously to produce the injury, so that it would not have happened in the absence of either. If, by the exercise of reasonable foresight and diligence, a concurring cause should have been foreseen and foreguarded of course liability for it attaches. But the mere fact that one of several concurring causes may not have been reasonably anticipated is not enough to shield from liability him who sets in motion the other; for it is well settled that the negligence complained of need not be the sole cause of the injury. It is enough to show that it is a proximate concurring cause; that is, one that was so efficient in causation that, but for it, the injury would not have occurred. 22 R. C. L., 128."

We also quote with approval from the opinion in the case of *Jackson v. Missouri Pac. Ry. Co., supra,* at page 936, of 42 S. W., 2d:

"In considering an unusual injury to plaintiff, the Supreme Court said:

" 'The substance of the contention for defendant is that the manner of the plaintiff's injury, as related by him, the manner in which he said he fell on the tracks, is unnatural and improbable, so much so that his injury cannot be regarded as a natural and probable or legal consequence of the claimed negligence. This, in effect, is saying that, conceding defendant's negligence, and plaintiff's injury in the manner in which he said it occurred, it was so exceptional in manner of occurrence that it could not reasonably have been anticipated to follow as the consequence of the alleged negligence, and hence there is no liability. It is not a necessary condition that the defendant did or could have foreseen the very injury complained of. In *Washburn v. Laclede Gas Light Co.,* 202 Mo. App. [102], *loc. cit.,* 115, 214 S. W. [410], 414, also a case cited by defendant, there is statement of another rule to be borne in mind:

" ' "The liability of a person charged with negligence does not depend on the question whether with the exercise of

reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission."

" 'The rule with some added qualification is stated in *Buckner v. Horse & Mule Co.*, 221 Mo. [700] *loc. cit.*, 710, 120 S. W. [766], 769, as follows:

" ' "It is not essential that defendant could have anticipated the very injury complained of, or that it could have anticipated that it would have occurred in the exact manner in which it did occur, but it is sufficient if the negligence of the defendant was the proximate cause of the injury." ' *McCray v. Missouri K. & T. Ry. Co.*, 321 Mo., 17, 10 S. W., 2d, 936, *loc. cit.*, 937.

"In the note to *Louisville & Nashville R. R. Co. v. Lawson*, L. R. A., 1917-B, page 1164, it is pointed out that: 'Whether or not the danger of a person beside the track being sucked under a rapidly moving train is such an occurrence as should reasonably be anticipated by the railroad company, so as to render it liable for the injury, is an interesting question, as to which there seems to be a difference of opinion among the authorities. In the majority of the cases, it has been apparently assumed that an injury of this kind is one which should be reasonably anticipated.' "

Whether the respondent's intestate was guilty of contributory negligence under the circumstances of this case was a matter for the jury to decide, since more than one reasonable inference could be drawn from the testimony. It is a matter of common knowledge that it is no easy matter to judge the speed of a moving object coming directly towards one, and it may well be that the intestate, when he realized that the train was not stopping, did not have time to move farther from the tracks of appellants. And again, it must be kept in mind that he had every right to expect that the train would come into this flag station at such a reduced speed as to enable it to stop its passenger

coaches at or near the small waiting room or shed, and platform.

It was also for the jury to say if respondent's intestate met his death in the manner claimed by respondent, and the answer to this had to be found from the testimony. There was sufficient testimony tending to establish that the intestate was thrown or sucked against the moving train by the disturbance of the air caused by this fast moving train to require this issue to be submitted to the jury.

In *Ford v. Atlantic C. L. R. R. Co.*, 169 S. C., 41, 78, 168 S. E., 143, opinion by the late lamented Mendel L. Smith, Acting Associate Justice, outstanding and able lawyer and jurist, we find (page 156) :

"It is also well established in this jurisdiction that if the facts, which if true would constitute evidence of negligence, are controverted, or if not in dispute there may be a fair and reasonable difference of opinion as to whether the inference of negligence may be drawn therefrom, or if in controversy and the inferences properly deducible therefrom are doubtful, or if they tend to show both parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question becomes issuable and must be submitted to the jury under appropriate instructions. *Osteen v. Southern Railway*, 76 S. C., 368, 378, 57 S. E., 196; *Miller v. Atlantic C. L. Railroad Company*, 140 S. C., 123, 138 S. E., 675.

"It is equally well settled here as elsewhere that in the consideration of a motion for a nonsuit, directed verdict, or new trial by the defendant in his favor, the circuit judge is required to view the testimony most favorably to the plaintiff even though all the testimony offered by the latter may be contradicted by that of the defendant. *Brogdon v. Northwestern Railroad Company*, 141 S. C., 238, 139 S. E., 459; *McCutchen v. Pac. Mut. Life Insurance Company*, 153 S. C., 401, 151 S. E., 67."

The recent case of *Rivers v. State Highway Department,*
S. C., 196 S. E., 172, is applicable in principle. In that case
it was the theory of the plaintiff that an automobile tire
came in contact with a protruding nail or spike on a bridge,
causing it to blow out. The defendant made a motion for
a directed verdict (page 173), "that there was no testimony
from which it might be reasonably inferred that 'the front
tire of the automobile came into contact with a nail or spike
on the bridge which caused it to blow out'."

Mr. Chief Justice Stabler, after a brief review of the
testimony, had this to say (page 173) : "While no one ac-
tually saw the wheel of the automobile come into contact
with a protruding spike on the bridge, we think that the
facts and circumstances disclosed by the testimony above
quoted correctly presented a question for the jury as to the
reasonable probability that it did so and that plaintiff's in-
juries occurred in the way alleged by him. In *Moseley v.
Southern Railway Company,* 164 S. C., 193, 162 S. E., 94,
95, it was said: 'The fact that an injury may have occurred
in one of a dozen ways, of course, would not defeat a plain-
tiff's right of recovery if the evidence tended to sustain a
reasonable probability of the one relied on. In a civil case
the law does not require proof to a certainty'."

The exceptions relating to the refusal to grant the mo-
tions for a nonsuit and for a directed verdict are overruled.

We now come to appellants' Exception 9, alleging error
on the part of the trial Judge in charging the jury as
follows:

"In this case the deceased was intending to embark upon
the passenger train of the Defendants as a passenger. The
law says that a railroad company must exercise the highest
degree of care for the safety and protection of its pas-
sengers; must exercise such a high degree of care as to
avoid the injury to a passenger, and if that passenger is in-
jured by the instrumentality of the carrier or the railroad
company at the time he is a passenger or at the time he is
in the custody of the Defendant, as a passenger, or intend-

ing to become a passenger on the train of the Defendants, the law says that if he is injured under such circumstances, by an instrumentality of the Defendants, the law presumes that the Defendants were negligent, but such a presumption is ·a rebuttable presumption, and like every other question of fact it is to be found and determined by the jury from the testimony.

"You have the right to take that into consideration, with any other circumstances, to decide whether or not the Defendants were negligent."

The error being:

"(a) That such charge was an erroneous statement of law, was not applicable to the issues involved in the case at bar, and was highly prejudicial to the rights of the Defendants, in that there was no evidence tending to show that Plaintiff's intestate was a passenger or within the custody or control of the Defendants so as to render applicable the rule that negligence on the part of the railroad is presumed from the mere fact of injury; and such erroneous and prejudicial statement of the law was not corrected, elsewhere in the charge.

"(b) That the said charge was in respect to matters of fact, in violation of article 5, section 26 of the Constitution of South Carolina."

The exception, it seems to us, is hypercritical. The opening sentence of the portion of the charge complained of is a statement of the undisputed fact that the decreased intended to embark upon the passenger train of the appellants. Having in mind, no doubt, that one of the issues to be passed upon by the jury was whether, under the circumstances as disclosed by the testimony, the status of the deceased had become that of a passenger, the trial Judge then charged the jury, and correctly so, that a railroad company must exercise the highest degree of care for the safety and protection of its passengers, and if a passenger is injured by the instrumentality of the carrier, or at a time he is in the custody of the carrier as a passenger, the law

presumes that the carrier was negligent, but such presumption was rebuttable, etc. It is true that the trial Judge also included one intending to become a passenger, but he was no doubt endeavoring to state the law with reference to a "passenger" who has not actually embarked upon the train, because later in his charge he stated: "It is a question of fact for you to determine whether or not the plaintiff's intestate, the deceased, was a passenger at a place, or at the place where the plaintiff alleges the injury occurred." The jury could not have been misled by the statement complained of, because it is too obvious that the trial Judge was charging the law with reference to the duty of a carrier to a passenger.

If the appellants desired a more comprehensive statement of the law as to when one becomes a passenger, or if they felt that the principle of law as charged was not as clear as it should have been, then it was their duty to call it to the attention of the trial Judge before the case was submitted to the jury, and if they fail to do so, they cannot thereafter complain.

In *Moore v. Southern R. Co.*, 163 S. C., 342, 161 S. E., 525, it is stated (page 528) : "The rule of this court is that, if a party to a suit desires any part of the charge more fully explained, it is the duty of that party to call the same to the attention of the circuit judge."

It should not be understood from what we have said herein that it is always necessary to submit to the jury the issue if a party litigant is or was a passenger, because under undisputed facts, such issue may easily be one of law to be passed upon by the Court. It was a border line issue in this case.

All exceptions have been considered, and are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.