**JOHNSON v. EASTERN AIR LINES, Inc.**

No. 27, Docket 21380.

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1949.

Decided Oct. 28, 1949.

William J. Junkerman, of New York City (Haight, Deming, Gardner, Poor & Havens and S. V. Silverthorne, Jr., all of New York City, on the brief), for defendant-appellee.

Edgar H. A. Chapman, of New York City (De Witt, Van Aken, Nast & Chapman and Macdonald De Witt and Harry H. Van Aken, all of New York City, on the brief), for plaintiff-appellant.

Before L. HAND, SWAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, as administrator of the estate of his son, sues for damages for the latter's death in an airplane accident in South Carolina on September 7, 1945. The action is brought upon the statute of that state, 1 S.C.Code, c. 15, § 411, 1942, granting a right of action for damages to the administrator of a person whose death is caused "by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." Jurisdiction of the district court is based upon the diverse citizenship of the parties. In a trial to the jury, plaintiff proved that his son was a fare-paying passenger on the defendant's plane which crashed into pine trees near Florence, S. C., destroying the plane and killing all on board. Defendant proved that the plane had been properly inspected, that the pilot was competent, that for some unknown reason after passing Florence on his flight north the pilot radioed for permission to turn back and land there, and that he was only about ten miles from the Florence airfield when the plane crashed. The cause of the accident has never been established. The trial court denied plaintiff's motion for a directed verdict and, after the jury had found for the defendant, denied plaintiff's motion to set aside the verdict as contrary to the law and contrary to the facts. Plaintiff contends on this appeal that those motions should have been granted, since the defendant did not prove that the pilot was

not negligent, and that the judgment for defendant should now be reversed and a new trial ordered.

■ Plaintiff contends that South Carolina law creates a presumption of negligence against a passenger carrier involved in an accident, and that defendant's failure to rebut this presumption should have entitled him to a directed verdict. Although there is undoubtedly such a presumption against a carrier, Danner v. South Carolina R. R. Co., 4 Rich.Law, S.C., 329, 55 Am.Dec. 678, it has been used only to allow a plaintiff to go to the jury, not as a basis for a directed verdict in his favor. Thus in Horne v. Southern Ry. Co., 186 S.C. 525, 197 S.E. 31, 38, 116 A.L.R. 745, the highest court of South Carolina approved the following charge to the jury: "The law says that a railroad company must exercise the highest degree of care for the safety and protection of its passengers; must exercise such a high degree of care as to avoid the injury to a passenger, and if that passenger is injured by the instrumentality of the carrier or the railroad company at the time he is a passenger * * * the law says that if he is injured under such circumstances, by an instrumentality of the Defendants, the law presumes that the Defendants were negligent, but *such a presumption is a rebuttable presumption, and like every other question of fact it is to be found and determined by the jury from the testimony.*" (Italics added.) See also Doolittle v. Southern Ry. Co., 62 S.C. 130, 40 S.E. 133, and Steele v. Southern R. Co., 55 S.C. 389, 33 S.E. 509, 74 Am.St.Rep. 756.

Defendant relies principally upon the New York rule as the law of the forum. That, as we had occasion to point out in Century Indemnity Co. v. Arnold, 2 Cir., 153 F.2d 531, certiorari denied 328 U.S. 854, 66 S.Ct. 1346, 90 L.Ed. 1626, is to like effect. Thus the New York Court of Appeals has said: "Even when there be a presumption of negligence arising from a failure upon the part of a common carrier to explain how an accident happened, it is for the jury to say whether the presumption, which is only prima facie evidence of negligence, entitles the plaintiff to a verdict. * * * The jury are not bound to presume negligence from the absence of an explanation, but, given all the surrounding circumstances, they may or may not infer it, according to the force and weight of those circumstances." Salomone v. Yellow Taxi Corp., 242 N.Y. 251, 259-260, 151 N.E. 442, 445. In accord are: Foltis, Inc., v. City of New York, 287 N.Y. 108, 38 N.E.2d 455, 153 A.L.R. 1122; Schulz v. Finn, 273 App.Div. 780, 75 N.Y.S. 2d 15; Judd v. Sams, 270 App.Div. 981, 62 N.Y.S.2d 678, affirmed 296 N.Y. 801, 71 N.E.2d 772. Goodheart v. American Airlines, 252 App.Div. 660, 254 App.Div. 566, 1 N.Y.S.2d 288, relied on by the plaintiff, was a case of reversal of a defendant's judgment because of an erroneous and inadequate charge; it does not suggest removal of the case from the jury.

■ In view of this similarity we need not go into the question, discussed by counsel, as to whether South Carolina or New York law—or perhaps more specifically, the New York conception, if any, of South Carolina law—controls. Compare 3 Moore, Federal Practice § 38.02, 1948 Cum.Supp. 27, n. 91, with Morgan, Choice of Law Governing Proof, 58 Harv. L. Rev. 153, 174-176, 185-189. Moreover, even if the governing law recognized a presumption so strong that, unrebutted, it would require the direction of a verdict for the plaintiff, we should nevertheless feel compelled to hold that here the defendant had produced evidence in rebuttal sufficient to require submission of the case to the jury. This will appear from a more detailed recital of the poignant and dramatic circumstances of this catastrophe.

The deceased, a lieutenant in the Navy, bought passage on defendant's Flight 42 to return on the night of September 6-7, 1945, from Jacksonville, Fla., to New York City in the line of duty. Flight 42 from Miami to La Guardia Field, New York, left Savannah, Ga., about 12:41 a. m. At 1:50 a. m. it reported that it had flown over Florence six minutes earlier at 5,000 feet, the altitude contemplated by the flight plan of the pilot and the time as estimated

by him in a message sent while over Charleston a half hour earlier. At 1:51 a. m. the pilot, having received a weather report from Washington that the ceiling at Raleigh was 200 feet or too low for safe landing, asked for clearance to proceed over Raleigh without stopping and also requested the weather conditions at Washington. The radio operator tried to give him that information. There was a "skip" condition in the atmosphere, and the response was never acknowledged. At 2:05 the control tower at Washington received a partially mutilated message which did say, however: "Want to go into Florence." Florence was not then a regularly scheduled stop for the defendant's planes, although it had been at an earlier period; and the pilot, who had been with the line since 1931, was familiar with the airport. The Jacksonville control, which heard the request, then obtained a clearance for the landing from the Florence tower and radioed it to Flight 42; but there was no acknowledgment. The plane crashed at 2:13 a. m. by striking two pine trees about 60 or 70 feet above ground on the edge of the Pee Dee River swamp, about ten miles northeast of the Florence airport. The direction of the plane as observed after the accident was in the direction of the airport, showing that it had returned toward, and almost reached, the field it was then seeking.

Plaintiff based his case substantially on the circumstances of the crash; and he stressed particularly the fact that the altitude of the plane at the time was far under the minimum height of 500 feet required for such flights by the Air Traffic Rules of the Civil Aeronautics Board, Federal Register, Part 60, § 60.105. He also relied upon the testimony of a farmer who lived some 10 or 11 miles from Florence and who, being up with sick children, saw the flight of the plane and heard it crash at a distance of a mile or a mile and a half from his home. This testimony was confused and conflicting in many details. In actual fact it added little to the plaintiff's case and in certain aspects, such as the assertions of the witness that he saw the plane flying north toward Wash-

ington, that it circled and turned back, and that the engine, when the plane was coming toward him, "made a noise that it usually don't make. It went phftt! phftt!" tended to support the defendant's case. The only other evidence of significance to the plaintiff's case was to the effect that weather conditions, while unfavorable around Raleigh, were good around Florence and that other planes passed over the territory without difficulty at or about this time.

On the other hand, defendant's evidence was as complete as seems possible under the circumstances where all actual eye-witnesses were killed. The evidence recounted as to the communications with the pilot shows how extensive were the contacts between him and the controls from Jacksonville north to Washington—and indeed to La Guardia Field in New York—up to the point that no further response was received from him. In addition there was the most detailed evidence, showing the inspection of all parts of the plane for several days before the accident, as well as during that evening at Miami upon its arrival from New York and before it was certified as completely airworthy and dispatched upon its return trip. In addition there was testimony of the proven capacity of the pilot and the copilot; the pilot indeed had over 18 years of service for this company, with approximately 16,000 hours of flying time. The judge's charge to the jury presented the issue of negligence quite fairly to the plaintiff, who took no exception to it.

On this record we cannot say as a matter of law that the jury could not find the defendant free of negligence under the circumstances. It can hardly be doubted that an emergency had presented itself to this experienced pilot of such a nature that he felt he had to turn back for an immediate unscheduled landing at Florence. Under the circumstances, his low flight at the time of the crash suggests not a voluntary violation of the Air Traffic Rules, but some engine trouble which did not permit him to make the airport for which he was striving. Air transportation is not such—or was not four years ago—

that the jury can be denied the right to make an inference of a crash due to mechanical failures which could be neither guarded against by the most extensive inspection nor avoided by a careful pilot. To hold, as plaintiff urges, that the representative of a victim of such a crash is entitled to a directed verdict unless the airline can prove affirmatively the non-negligent cause of the mishap would be to make the liability of the airline for all essentials that of an insurer. Whether or not that be desirable social policy, it is not now the law of either South Carolina or New York.

Affirmed.